COMMONWEALTH of Pennsylvania,
Appellee

v.

David STEWARD, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 14, 2000.
Filed April 25, 2001.
Reargument Denied June 27, 2001.

Garrett D. Page, Norristown, for appellant.

Mary M. Killinger, Asst. Dist. Atty., Norristown, for the Com., appellee.

Before FORD ELLIOTT, J., EAKIN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 Appellant appeals *nunc pro tunc* from the judgment of sentence of life imprisonment imposed after his conviction by a jury of first degree murder, aggravated assault, robbery, burglary, theft by unlawful taking, possession of an instrument of crime, criminal conspiracy, receiving stolen property, reckless endangerment and carrying firearms without a license.[1] After review we affirm.

¶ 2 On New Years Day 1986, Doctor Michael Groll and his wife were asleep in their bedroom when they were awakened by two intruders. Dr. Groll pointed his finger at one of the intruders and told him to "get out of here." At this point one of the intruders fired a gun and killed Dr.

---

1. 18 Pa.C.S.A. § 2502, 2702, 3701, 3502, 3921, 907, 903, 3925, 2705, and 6106 respectively.

Groll. While in the bedroom, the other intruder forced Mrs. Groll to give him the rings she was wearing. The intruder then took her at gunpoint into the bathroom where she handed him an envelope of money that she had in her purse. The intruders subsequently fled the house.

¶ 3 Two weeks later, Appellant was in the Philadelphia Police station being arraigned on an unrelated assault charge. Appellant was represented by Attorney Michael Floyd on that matter. After the arraignment on the assault matter, homicide detectives took him for questioning concerning the Groll shooting death. Attorney Floyd was not present when Appellant was questioned. Although given his *Miranda* rights by the detective before questioning, Appellant gave an oral statement implicating himself and an accomplice in the murder of Dr. Groll. Appellant subsequently signed a written waiver of his *Miranda* rights and also a confession, as well as making a drawing of the victim's bedroom. Mrs. Groll later picked Appellant out of a lineup. Appellant filed a pretrial motion to suppress his oral statements, written confession and drawing but it was denied by the Trial Court. Appellant proceeded to a jury trial along with a codefendant, Christopher Briggman. Appellant was convicted and sentenced to life imprisonment.

¶ 4 Appellant, still represented by trial counsel, filed a post trial motion which was denied by the Trial Court prior to sentencing. In this motion, Appellant raised the issues of whether the Trial Court erred in failing to grant his pretrial motions, whether the evidence was sufficient to sustain the verdict, whether the verdict was against the weight of the evidence and whether the trial court erred in failing to sustain defense demurrers. *See* Post Trial

Motion, filed 6/30/86. The post trial motion was denied by the Trial Court. Appellant's trial attorney then filed a notice of appeal from the judgment of sentence. However, the appeal was later dismissed for trial counsel's failure to file a brief. *See Commonwealth v. Steward,* 382 Pa.Super. 648, 549 A.2d 1343 (1988) (unpublished memorandum filed 8/4/88). Appellant subsequently filed a *pro se* PCRA Petition. Counsel was appointed for Appellant who filed a *Turner/Finley*[2] no merit letter and sought leave to withdraw representation. The Trial Court then dismissed the PCRA Petition. Appellant appealed *pro se* and our Court affirmed. *See Commonwealth v. Steward,* 724 A.2d 961 (Pa.Super.1998) (unpublished memo filed 7/1/98). However, our Supreme Court reversed and remanded to the Trial Court for a hearing on the issue of whether trial counsel's ineffectiveness deprived Appellant of his right to a direct appeal. *See Commonwealth v. Steward,* 559 Pa. 384, 740 A.2d 1141 (1999). After conducting the required evidentiary hearing, the Trial Court reinstated Appellant's direct appeal rights *nunc pro tunc.* Appellant, who was appointed new counsel, subsequently filed this instant direct appeal from his judgment of sentence.

¶ 5 Appellant presents six (6) issues for our consideration:

I. DID NOT THE SUPPRESSION COURT ERR, IN NOT SUPPRESSING THE TYPED AND ORAL CONFESSION, WHEN APPELLANT WAS INTERROGATED AFTER HE HAD INVOKED HIS RIGHT TO COUNSEL AND HAD COUNSEL PRESENT AT THE ARRAIGNMENT ON AN UNRELATED OFFENSE JUST MINUTES BEFORE THE INSTANT ALLEGED CONFESSION TO MURDER,

2. *Commonwealth v. Turner,* 518 Pa. 491, 494–95, 544 A.2d 927, 928–29 (1988) and *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213, 215 (1988).

AND NEVERTHELESS WAS NOT PROPERLY REMIRANDIZED WITH THE PRESENCE AND BENEFIT OF COUNSEL.

II. WAS NOT THE SUPPRESSION COURT AND TRIAL COURT IN ERROR IN ALLOWING THE OUT–OF–COURT IDENTIFICATION OF THE "LINE–UP" WHEN SAME WAS GAINED THROUGH UNDULY SUGGESTIVE PROCEDURES?

III. WAS NOT TRIAL COUNSEL INEFFECTIVE IN FAILING TO INVESTIGATE, AND ENGAGE AN EXPERT TO DETERMINE AND/OR CONFIRM THE APPELLANT'S ASSERTION THAT THE CONFESSION AS PRODUCED AT TRIAL, WAS A FRAUD, AND UNAUTHENTIC, AFTER APPELLANT INFORMED COUNSEL THAT HE SIGNED "BLANK SHEETS OF PAPER," WITH NO TYPED CONFESSION STATEMENT THEREON?

IV. WAS NOT TRIAL COUNSEL INEFFECTIVE FOR NOT PROPERLY CROSS EXAMINING THE COMMONWEALTH WITNESS AS TO HER SUGGESTIVE OUT–OF–COURT IDENTIFICATION?

V. WAS NOT THE TRIAL COURT IN ERROR AND WERE NOT THE APPELLANT'S ATTORNEYS INEFFECTIVE IN NOT ORDERING THE CLOSING ARGUMENTS TO BE TRANSCRIBED, IN A MURDER CASE, WHEN THE CO–DEFENDANT'S TRANSCRIPT WAS SO TRANSCRIBED, AND THE FAILURE TO DO SO PREVENTED MEANINGFUL REVIEW OF ANY ERROR?

VI. WAS NOT TRIAL COUNSEL INEFFECTIVE IN ESSENTIALLY PLEADING APPELLANT "GUILTY" TO MURDER IN HIS CLOSING STATEMENT TO THE JURY, WITHOUT EVER DISCUSSING SAME APPROACH WITH APPELLANT NOR GAINING HIS CONSENT?

Appellant's Brief at 3.[3] We will consider these issues *seriatim.*

■ ¶ 6 In Appellant's first issue he argues that the homicide detectives should not have questioned him regarding the murder of Dr. Groll since he had already specifically invoked and asserted his right to counsel whenever he retained Attorney Floyd to represent him on the unrelated assault offense. Appellant asserts that because he was questioned about the homicide without the presence of counsel, the oral and written statements which he gave should have been suppressed. After careful consideration we must disagree.

■ ¶ 7 As a reviewing court, when evaluating the propriety of a Trial Court's denial of a suppression motion our role is to determine:

> whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from these factual findings. *Commonwealth v. Jackson,* 548 Pa. 484, 487, 698 A.2d 571, 572 (1997); *Commonwealth v. J.B.,* 719 A.2d 1058, 1061 (Pa.Super.1998). As a reviewing court, we are therefore not bound by the legal conclu-

---

**3.** We have renumbered Appellant's issues for the purposes of facilitating our review.

sions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Commonwealth v. Hayward,* 756 A.2d 23, 26 (Pa.Super.2000).

¶ 8 Appellant relies principally on the case of *Commonwealth v. Santiago,* 528 Pa. 516, 599 A.2d 200 (1991) as support for his argument that his statements to detectives should have been suppressed.[4] In *Santiago,* the appellant was arrested by the FBI in Washington, DC on an outstanding warrant for unlawful flight to avoid prosecution in connection with the murder of a man from Lawrence County, Pennsylvania. When he was arrested, Santiago invoked his right to remain silent and requested an attorney. Questioning ceased and an attorney was provided for him. The next day two detectives from Pittsburgh sought to interview Santiago in connection with the murder of a Pittsburgh man. Prior to questioning Santiago, the detectives advised him of his *Miranda* rights and the defendant agreed to the interview both orally and in writing. Santiago subsequently confessed to the murder during the interrogation. Prior to his trial, Santiago sought to have his confession suppressed, however this motion was denied by the Trial Court.

¶ 9 Our Court affirmed the Trial Court, however the Pennsylvania Supreme Court reversed. Relying on the U.S. Supreme Court's decisions in *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) and *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) our Supreme Court ruled that Santiago's confession to the Pittsburgh detectives should have been suppressed.

¶ 10 Both *Minnick* and *McNeil* were cases in which the United States Supreme Court clarified under what circumstances police interrogation of a suspect in custody, who had previously requested or obtained the assistance of an attorney, was permissible. *Minnick* and *McNeil* were interpretations and applications by the United States Supreme Court of its earlier decisions in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Miranda v. Arizona* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[5]

¶ 11 In *Miranda* the United States Supreme Court held that in order to protect an individual's privilege against self-incrimination secured by the Fifth Amendment to the United States Constitution the police may not conduct a custodial interrogation of that individual once the individual

4. The Commonwealth has asserted that Appellant has waived this issue and the applicability of *Santiago* since *Santiago* was decided after Appellant's judgment of sentence was entered in this case. We disagree. Since Appellant's right to direct appellate review of his conviction has now been restored, *nunc pro tunc,* his judgment of sentence cannot be considered to have been made final at any time prior to the instant direct appeal proceeding. As our Supreme Court has stated: "[In Pennsylvania] we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occurs before the judgment has become final." *Blackwell v. State Ethics Commission,* 527 Pa. 172, 182, 589 A.2d

1094, 1099 (1991). Thus, we are bound to apply the decisional law of our Commonwealth as it stands today in the resolution of Appellant's claim. We also note that Appellant properly preserved his challenge to the trial court's ruling on his suppression motion by raising the issue in a post trial motion filed after the conclusion of his trial, which at the time of his trial in 1986 was the proper method to preserve issues for appellate review. *See e.g. Commonwealth v. Gravely,* 486 Pa. 194, 199, 404 A.2d 1296, 1298 (1979).

5. Reaffirmed by *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

has shown that he intends to exercise his Fifth Amendment privilege. The Court held:

> If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

*Id.* at 474, 86 S.Ct at 1628.

¶ 12 In *Edwards* the United States Supreme Court explained that in cases where a defendant has invoked his or her Fifth Amendment right to counsel, and the initial interrogation is stopped, but the police again try to interrogate the defendant at a later point in time, there must be "additional safeguards." *Id.* 451 U.S. at 484–485, 101 S.Ct. at 1885. Thus, the Court held:

> [A]n accused, . . . ., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.*

¶ 13 In *Minnick* the United States Supreme Court emphasized that its holding in *Edwards* must be strictly construed to mean that "when counsel is requested, [by an accused individual] interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Id.* at 153, 111 S.Ct. at 491.

¶ 14 However in *McNeil,* the United States Supreme Court declined to apply the holdings of *Edwards* and *Minnick* to bar subsequent custodial interrogation by the police in situations in which an individual had previously invoked his Sixth Amendment right to representation by counsel during a judicial proceeding on an unrelated matter. The Court reasoned that the nature of the right to counsel secured by the Fifth Amendment is fundamentally different from that secured by the Sixth Amendment. The Court said:

> The Sixth Amendment right . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."
>
> * * * * *
>
> The *Edwards* rule . . . is not offense specific: Once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present.

*Id.* at 175, 177, 111 S.Ct. at 2207–2208 (citations omitted).[6]

---

6. Very recently in *Texas v. Cobb,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) the United States Supreme Court reemphasized that its decision in *McNeil* "meant what it said, and that the Sixth Amendment right [to counsel] is 'offense specific.' " *Id.* 532 U.S. at ——, 121 S.Ct. at 1338. In *Cobb* a house had been burglarized and the occupants had mysteriously vanished. The defendant was arrested and charged only with the burglary of the house, and counsel was appointed to represent him with respect to the burglary charge. Based on new information they subsequently received which indicated that the defendant may have slain the occupants of the house, police obtained a warrant for the defendant's arrest on murder charges. Police later questioned the defendant about

¶ 15 Thus our Supreme Court in *Santiago* ruled, in accordance with the teachings of *Minnick* and *McNeil*, that appellant Santiago had invoked his "non offense specific" Fifth Amendment right to the assistance of counsel during the initial police interview on the unlawful flight charge rather than his "offense specific" Sixth Amendment right to counsel. Hence, in accordance with *Minnick* and *Edwards*, our Supreme Court reasoned that the police were barred from conducting the second interview of Santiago concerning the unrelated murder charge without the presence of his counsel. So, even though the detectives from Pittsburgh read Santiago his *Miranda* rights and obtained his consent to the interview, this consent was invalid since it was obtained in contravention of defendant's right to have counsel present as he initially requested. *Santiago*, 599 A.2d at 202–203.

¶ 16 Subsequently to *Santiago* our Supreme Court made it clear that in order for *Edwards* and *Minnick* to apply to bar the admission into evidence of a defendant's inculpatory statements, made after the defendant had allegedly requested but not received the assistance of counsel, the evidence of record must establish that the defendant specifically invoked his Fifth Amendment right to counsel prior to police questioning. *See Commonwealth v. Marinelli*, 547 Pa. 294, 319, 690 A.2d 203, 216

(1997) (whenever record showed that defendant willingly gave statements to the police, and the record did not show that defendant had invoked his Fifth Amendment right to counsel, suppression court properly refused to suppress his statements). *Commonwealth v. King*, 554 Pa. 331, 354, 721 A.2d 763, 774–775 (1998) (where transcript from suppression hearing and trial record did not contain evidence to establish defendant's claim that when he was first questioned by law enforcement officials he asserted his privilege against self-incrimination and his right to counsel, appellant's subsequent written waiver of his *Miranda* rights was valid and statements obtained during second interrogation was admissible).

¶ 17 In the case *sub judice*, as in *King* and *Marinelli*, the evidence adduced at the suppression hearing, and at trial, does not establish that Appellant ever specifically invoked his Fifth Amendment right to counsel at the time of his arraignment on the unrelated assault charge or at any time during Appellant's questioning by the Philadelphia detectives about the Groll murder. Appellant avers, as the defendants did in *King* and *Marinelli*, that he made a request for counsel but that the police denied his request. It is certainly true that Appellant testified at the suppression hearing that he requested the assistance of

the murders, without first seeking the permission of previously appointed counsel. The defendant waived his *Miranda* rights and gave a full confession. In a 5–4 decision, the United States Supreme Court ruled that the confession was admissible even though the defendant's Sixth Amendment right to counsel had attached with respect to the burglary offense. The Court held that the right to counsel secured by the Sixth Amendment does not bar police from questioning a suspect about crimes which are "factually related" to the offense for which the suspect was originally charged. The Court specified that when the

Sixth Amendment right to counsel attaches it encompasses only those "offenses that, even if not formally charged, would be considered the same offense under the [test enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)]." *Cobb*, 532 U.S. at ——, 121 S.Ct. at 1343. In *Blockburger*, the Court had previously ruled: "where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two offenses or only one, is whether each [statutory] provision requires proof of a fact which the other does not." *Blockburger*, at 304, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.

counsel during the interview with the investigating detectives, and that he also claimed those detectives refused to provide counsel for him. *See* N.T. Suppression Hearing, 5/19/86, at 131. However, it is also equally true that, by contrast, the detectives who interrogated Appellant testified that he made no request to consult with an attorney at any time. *See id.* at 88, 110, 112.[7] At the conclusion of the suppression hearing the Trial Court was forced to choose between these conflicting versions of events. This the Trial Court did by making explicit findings of fact on the record. In making its findings of fact, the Trial Court expressly credited the detective's version of events and specifically ruled that the defendant had not made any requests for the assistance of counsel to the detectives. *Id.* at 224. Since the learned Trial Judge had the opportunity to see and observe the witnesses first hand, and to gauge their credibility, and since we see nothing in the record which calls the Trial Judge's credibility determination into doubt, we will not disturb his conclusion that Appellant's confession was the product of a knowing and voluntarily waiver of his *Miranda* rights. *See Commonwealth v. Bronshtein,* 547 Pa. 460, 474–475, n. 14, 691 A.2d 907, 914, n. 14 (1997) (when suppression court had opportunity to observe demeanor and hear testimony of witnesses at suppression hearing its credibility determinations relating to the issue of whether defendant's waiver of *Miranda* rights was voluntary will not be disturbed since they were properly based upon the evidence adduced at the suppression hearing).

¶ 18 We note that the fact that Appellant was represented by Attorney Floyd at the arraignment on the unrelated assault matter did not automatically constitute the invocation by Appellant of his Fifth Amendment right to counsel. As discussed above, both the United States Supreme Court in *McNeil* and our Supreme Court in *Santiago* have made it abundantly plain that the right to counsel secured by the Fifth Amendment and the right to counsel secured by the Sixth Amendment are not one and the same. Indeed the factual circumstances of *McNeil,* under which the U.S. Supreme Court emphatically drew a bright-line distinction between the nature of the right to counsel secured by both amendments, are similar to those of the case at bar.

¶ 19 In *McNeil* appellant was arrested for an armed robbery charge. At his initial bail hearing McNeil was represented by counsel appointed by the public defender. Subsequent to the hearing McNeil was questioned by the police on an unrelated murder. McNeil subsequently waived his *Miranda* rights and confessed. Even though counsel had appeared for McNeil at the first hearing, as discussed *supra,* the Supreme Court declined to find that counsel's appearance at the hearing automatically triggered appellant's Fifth Amendment right to counsel. *McNeil,* 501 U.S. at 173–174, 111 S.Ct. 2204.

¶ 20 Thus in the case at bar, pursuant to *McNeil,* Attorney Floyd's representation of Appellant at the assault hearing did not automatically trigger Appellant's Fifth Amendment right to counsel and bar police questioning of him in connection with the Groll murder. As the record supports the conclusion that Appellant did not at any time specifically invoke his non offense specific right to counsel pursuant to the Fifth Amendment, Appellant's voluntary waiver of his *Miranda* rights was not obtained in violation of his Fifth Amendment right to counsel. *McNeil, supra. See also Commonwealth v. Hayes,* 755 A.2d 27, 33 (Pa.Super.2000), *appeal denied,* 564 Pa.

---

7. Attorney Floyd did not testify at the suppression hearing.

726, 766 A.2d. 1244 (2001) (appellant's request for assistance of counsel on charge of drug possession did not automatically invoke his Fifth Amendment right to the assistance of counsel and did not bar subsequent questioning on unrelated homicide).

¶ 21 Finding no legal or factual error by the Trial Court in the denial of Appellant's suppression motion with respect to the statements which he gave to the detectives, since the record supports the conclusion that those statements were given knowingly and voluntarily, we affirm its decision not to suppress them. *Bronshtein, supra.*

¶ 22 In Appellant's second issue he contends that the Trial Court erred in failing to suppress Mrs. Groll's in court identification of Appellant and allowing Mrs. Groll to identify Appellant at the time of trial.[8] Appellant maintains that Mrs. Groll's identification of Appellant at the pretrial lineup held in this matter, and in court at the time of trial, was the product of an improperly suggestive factor, namely the fact that Mrs. Groll had seen pictures of the Appellant in two newspaper articles after Appellant had been arrested. Appellant notes that Mrs. Groll did not previously select Appellant's picture from a photographic array shown to her even though it included a picture of Appellant.

¶ 23 In *Commonwealth v. Carter* 537 Pa. 233, 643 A.2d 61 (1994) our Supreme Court addressed a similar claim. In *Carter* the victim of a carjacking in which her boyfriend was murdered could not select the appellant from a photo array which she had been shown the day after the attack. Subsequent to viewing the photo array the victim read a newspaper article which contained the appellant's picture. Thereafter,

the victim identified the appellant as her boyfriend's attacker in open court. The Supreme Court held that while the positive identification of the appellant as the assailant by the victim after she had seen the newspaper article was an "impermissible suggestive identification" the Court did not hold that the victim was precluded from identifying the appellant in open court at the time of trial.

¶ 24 The Court reasoned as follows:

This Court has recognized that identifications made only after a witness has seen the defendant in the media might prove to be suggestive. See *Commonwealth v. Porter,* 524 Pa. 162, 569 A.2d 942, cert. denied, 498 U.S. 925, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990). Accordingly, we find [the victim's] positive identification of the appellant after seeing his picture in the newspaper an "impermissible suggestive identification."

The problem with an impermissible suggestive identification is the potential for misidentification, resulting in a due process violation if that identification is admitted at trial. *Commonwealth v. Silver,* 499 Pa. 228, 452 A.2d 1328 (1982); *Commonwealth v. McGaghey,* 510 Pa. 225, 507 A.2d 357 (1986). Following a suggestive pre-trial identification, a witness will not be permitted to make an in-court identification unless the prosecution establishes by clear and convincing evidence that the identification was not induced by events occurring between the time of the crime and the in court-identification. *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977). Thus, an in-court identification following a suggestive out of court identification will be admissible only if, considering

---

**8.** The Honorable Joseph H. Stanziani presided over both Appellant's suppression hearing and trial.

the totality of the circumstances, it is determined that the in-court identification had an origin sufficiently distinguishable to be purged of the primary taint. *Commonwealth v. Glover*, 488 Pa. 459, 412 A.2d 855 (1980) (quoting *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).

In determining whether an independent basis for identification exists, we must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376 (1985). Our scope of review limits our consideration to a determination of whether sufficient evidence has been presented to support the independent basis for the in-court identification. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

*Id.* at 253–254, 643 A.2d at 71. The Supreme Court ultimately concluded that the victim had a sufficient independent basis for her in-court identification to purge the taint of the suggestive pre-trial identification and therefore her in-court identification was proper.

█ ¶ 25 In the case at bar the victim, Mrs. Groll, also had a sufficient independent basis for her identification of Appellant at the police lineup and at trial. Mrs. Groll testified at the suppression hearing that after the shooting of her husband, Appellant came around to her side of the bed and attempted to pull her rings off her fingers. N.T. Suppression Hearing, *supra*, at 9. Mrs. Groll testified that after

Appellant had gotten the rings she accompanied him into the bathroom to give Appellant the cash which she had in an envelope. *Id.* Mrs. Groll testified that the bathroom was very brightly lit since the "whole ceiling was covered with fluorescent tube lighting." *Id.* After handing Appellant the envelope containing the money, Mrs. Groll remained standing right next to the Appellant in the illuminated bathroom for a two-minute period while Appellant rifled through her pocketbook which was lying on the counter. *Id.* at 9–10. Despite being told by Appellant not to look at him, Mrs. Groll testified that she made every effort to try to remember anything that she could, and that she did not obey his instructions not to look at him. *Id.* at 10, 35.

¶ 26 Prior to the police lineup, which took place on February 13, 1986,[9] approximately six (6) weeks after the burglary and shooting of her husband, Mrs. Groll candidly acknowledged to one of the investigating detectives, Detective Livingood, that she had seen pictures in the newspaper of the two people who had been arrested for this offense. *Id.* at 11. She told Detective Livingood that she saw one of the gentlemen clearly during the incident but that she did not get a look at the other person. She asked the detective whether it would be permissible to identify the other individual based on the newspaper picture. The Detective instructed her to only identify the individual based on her recollection of the incident. *Id.* at 12. Mrs. Groll then proceeded to pick Appellant out of the lineup. Mrs. Groll, however, declined to identify the other individual who participated in the attack, even though the individual was presented in a second lineup, because she admitted that she did not see him clearly during the attack. Thus, she believed that any identi-

---

9. *Id.* at 61.

fication would have been based solely on her viewing of his picture in the newspaper. *Id.*

¶ 27 Appellant's trial counsel skillfully and effectively cross-examined Mrs. Groll during the suppression hearing, but she did not waiver in her assertion that the only basis for her identification of the Appellant was the fact that she had seen him clearly on the evening of the attack. Mrs. Groll consistently maintained that the only reason that she selected Appellant from the lineup as the individual who was with her in the bathroom during the incident was her close personal observation of him during the incident. *See id.* at 23, 35, 39.

¶ 28 Detective Livingood testified at the suppression hearing and corroborated that Mrs. Groll had told him, prior to the lineup, that she had seen pictures in the newspaper of the two individuals who had been arrested, and that she had asked him whether she could identify one of the individuals on the basis of the picture. *Id.* at 46. He recounted that he informed her that she should only identify someone she remembered from her bedroom the night of the attack and nothing else. *Id.* Detective Livingood testified that Mrs. Groll promptly identified Appellant in the lineup. *Id.* at 49. However, she failed to identify the second individual who had been arrested when he was presented during the second lineup. *Id.* at 46. The detective also testified that the picture of Appellant that he had included in the photographic array, which he had previously shown Mrs. Groll, was over five (5) years old at the time he showed it to her. *Id.* at 45.

¶ 29 As a result of this testimony, the Suppression Court concluded that "[t]he

identification by [Mrs.] Groll at the February 13, 1986 lineup was based upon her opportunity to observe the individual while in her bedroom and bathroom [and] was made from an independent recollection. The identification was reliable and not tainted by any improper suggestivity." *Id.* at 229. The Suppression Court's conclusion was amply supported by the record, as it clearly showed that Mrs. Groll made every attempt to conscientiously, honestly and accurately identify the individuals who participated in the murder of her husband. Mrs. Groll's identification of Appellant had an origin independent of the newspaper photographs, namely her opportunity to observe Appellant in the brightly lit bathroom for two minutes while she was in close proximity to him. Although she initially could not identify Appellant from the photographic array, that was quite likely due to the five (5) year old age of the picture and not due to any defect in her ability to accurately recall the incident. We therefore find no error in the rulings of the Trial Court and affirm its decision to allow Mrs. Groll to make an in-court identification of Appellant.[10] *Carter, supra. See also Commonwealth v. Martin,* 307 Pa.Super. 118, 452 A.2d 1066, 1068–1069 (1982) (victim's view of assailant's face in an adequately lit hallway for one minute was an adequate independent basis for the in court identification of assailant); *Commonwealth v. Burton,* 452 Pa. 521, 307 A.2d 277 (1973) (victim's unobstructed view of assailant at close range in room illuminated by mercury vapor street light sufficient independent basis for in court identification of assailant).

■ ¶ 30 We turn now to Appellant's final four (4) claims which center on the

10. The jury was also made aware at trial that Mrs. Groll did not identify Appellant's picture when initially presented with the photographic array containing it and also that she had seen news accounts containing Appellant's picture prior to her identification of him at the lineup. N.T. Trial 6/16/86, at 57–63.

alleged ineffective assistance of trial counsel. We begin by noting our well-settled standard of review of a claim of trial counsel's ineffectiveness:

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course, then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice.

*Commonwealth v. Statum,* 2001 PA Super 46, ¶ 9, 769 A.2d 476 (2001) (*en banc*); *Commonwealth v. Edwards,* 762 A.2d 382, 390 (Pa.Super.2000). We must therefore first ascertain whether the underlying claim has merit. *Commonwealth v. Breisch,* 719 A.2d 352, 354 (Pa.Super.1998), *citing, Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the underlying claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis. *Id.*

¶ 31 Appellant's first claim of trial counsel's ineffectiveness is that trial counsel was ineffective for failing to call an expert witness to prove that Appellant's confession was fraudulently obtained. To wit, Appellant contends that he actually signed blank pieces of paper rather than the typewritten confession which was entered into evidence at trial. Appellant asserts that trial counsel should have retained an expert to investigate the authenticity of the confession. The Commonwealth asserts that this issue is meritless, and we must agree.[11]

¶ 32 To prevail on a claim for ineffective assistance of counsel for failure to call witnesses, appellant must demonstrate:

(1) that the witnesses existed; (2) that the witnesses were available; (3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; (4) that the witnesses were available and prepared to cooperate and would have testified on Appellant's behalf; and (5) that the absence of the testimony prejudiced the Appellant.

*Commonwealth v. Lawson,* 762 A.2d 753, 756 (Pa.Super.2000) citing *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999). Our Supreme Court has also made clear that: "[w]hen a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence." *Commonwealth v. Williams,* 537 Pa. 1, 29, 640 A.2d 1251, 1265 (1994) citing *Commonwealth v.*

---

11. The Trial Court in its opinion indicated, without elaboration, that it thought this issue had arguable merit and requested remand for an evidentiary hearing. Trial Court Opinion, *supra,* at 15. However, our Court has ruled in *Commonwealth v. Pearson,* 454 Pa.Super. 313, 685 A.2d 551, 558 (1996), *appeal denied,* 549 Pa. 699, 700 A.2d 439 (1997):

[The] trial court cannot conduct a hearing on the matter unless and until this Court remands with instructions to hold such a hearing. . . . Only when the underlying issue raised is arguably meritorious, and the appellant had established that he has suffered by the alleged ineffectiveness, will such a hearing become necessary.

*Holloway,* 524 Pa. 342, 572 A.2d 687 (1990). This is consistent with our Supreme Court's previous mandate that to justify an evidentiary hearing with respect to assertions of ineffectiveness of trial counsel, it is required that an offer of proof be made that alleges sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective. *Commonwealth v. Durst,* 522 Pa. 2, 5, 559 A.2d 504, 505 (1989). Claims of ineffectiveness of trial counsel cannot be considered in a vacuum. *Id.*

¶ 33 In the case before us, Appellant has not identified or even alleged the existence of a particular expert witness who was available at the time of trial and known to trial counsel but whom trial counsel failed to call. Neither did Appellant provide the Trial Court or this Court with an offer of proof as to the precise type of expert testimony he proposes to present at an evidentiary hearing to prove his claim that the confession was a forgery. Appellant does not allege or otherwise indicate that he has an expert willing to testify that the confession was prepared after Appellant had signed blank pieces of paper and that this expert was available at the time of trial and should have been discovered through the exercise of reasonable pretrial investigation on the part of trial counsel. As a result, Appellant has not demonstrated that this particular claim of trial counsel's ineffectiveness for failure to call an expert is of arguable merit. *Williams, supra.* See also *Commonwealth v. Wayne,* 553 Pa. 614, 644, 720 A.2d 456, 470–471 (1998) ("The mere failure to obtain an expert witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to ad-

vance appellant's cause."). As we have determined that this particular claim does not have arguable merit, remand for an evidentiary hearing on this issue is unnecessary.[12] *Pearson, supra.*

█ ¶ 34 Appellant next maintains that Trial Counsel was ineffective for failing to adequately cross-examine Mrs. Groll on what he claims was "an out of court suggestive identification." Appellant's Brief at 24. Appellant does not, however, explain in what way he believes trial counsel's cross-examination of Mrs. Groll was deficient or how it should have been augmented. The Trial Court noted in its opinion that "a review of this record reveals extensive cross-examination of Mrs. Groll by defense counsel regarding her pre-trial, out-of-court identifications of David Steward." Trial Court Opinion, *supra,* at 14, fn. 5. Thus, the Trial Court was unconvinced that this issue had arguable merit, but, in an abundance of caution, the Trial Court agreed to conduct an evidentiary hearing to better ascertain its merits. *Id.* at 15.

█ ¶ 35 We find the learned Trial Judge's conscientious concern to be salutary. However as our Court has stated in the past: "If it is clear that the allegation of ineffectiveness of counsel lacks arguable merit, then an evidentiary hearing is unwarranted and the unfounded allegation will be rejected." *Commonwealth v. McFadden,* 402 Pa.Super. 517, 587 A.2d 740, 744 (1991) (citation omitted). Our review of the cross examination of Mrs. Groll conducted by Appellant's trial counsel at both the suppression hearing and the trial compels us to conclude that that trial counsel skillfully and effectively cross-

---

12. Our review of the transcript of the Suppression Hearing held in this matter shows that Appellant's trial counsel extensively explored, via cross examination, the issue of whether Appellant was induced into actually signing blank sheets of paper instead of his written confession and waiver of *Miranda* rights form.

examined Mrs. Groll both during the suppression hearing and at trial concerning the basis for her identification of Appellant. Counsel thoroughly explored any impact or effect her prior viewing of Appellant's picture in the newspaper had on her ability to independently identify Appellant. Consequently, as this allegation of trial counsel's ineffectiveness is not of arguable merit, a remand for an evidentiary hearing on this issue is unnecessary. *Pearson, supra.*

■ ¶ 36 Appellant's final two assertions of ineffective assistance of counsel concern the failure of trial counsel to order transcription of the closing arguments of his trial. Appellant avers that his trial counsel essentially conceded his guilt during the closing argument and threw him to the mercy of the jury. Appellant maintains that since his counsel in effect "pled him guilty" his counsel should have obtained his consent before making such an argument or at least consulted with him.[13] Appellant contends that his trial counsel should have preserved this issue for appellate review by ordering transcripts of the closing argument. Alternatively, Appellant argues that the trial court erred by failing to order that a transcript of the closing arguments be made.

¶ 37 The Commonwealth by contrast asserts that it does not agree that Appellant's trial counsel used the language which Appellant claims he did in his closing argument since, because of the absence of a transcript, it does not know what trial counsel said. The Commonwealth also points out that this was a capital murder case and asserts that trial counsel's concession of Appellant's guilt could have had a rational basis, namely to save Appellant from the death penalty. The Commonwealth asserts that the issue has been waived since the delay in raising it has prejudiced the Commonwealth's ability to respond.

¶ 38 After review we must find this issue waived for the purposes of this direct appeal proceeding since Appellant has not provided us with a complete record of the closing arguments of trial counsel which would enable us to properly review his claim.

■ ¶ 39 We first note that it was not the responsibility of the Trial Court to order the transcription of the closing arguments of Appellant's trial at the time of trial. To the contrary, Pa.R.A.P.1911 makes it abundantly plain that it is the responsibility of the Appellant to order all transcripts necessary to the disposition of his appeal. *Commonwealth v. Williams,* 552 Pa. 451, 456, 715 A.2d 1101, 1103 (1998). At the time Appellant's trial counsel filed his notice of appeal, trial counsel did file an order for transcript pursuant to Pa.R.A.P.1911, however trial counsel did not specifically order that a transcript of

---

13. Appellant avers that at a P.C.R.A. hearing in 1996 for his codefendant Christopher Briggman the prosecutor in Appellant's trial testified that Appellant's trial counsel stated in his closing to the jury that Steward "had done it" and literally "threw Steward to the jury." In support of his assertion Appellant relies on a photocopy of the notes of testimony of the prosecutor's testimony ostensibly taken at the February 26, 1996 PCRA hearing. However these reproductions of the notes of testimony of that hearing have not been made part of the certified record in this matter and we are not permitted to consider them. *See Commonwealth v. Bracalielly,* 540 Pa. 460, 475, 658 A.2d 755, 763 (1995) (internal citations omitted) ("It is a well settled principle that appellate courts may only consider facts which have been duly certified in the record on appeal. . . . An item does not become part of the certified record by simply copying it and including it in the reproduced record.") *See also* Pa.R.A.P.1926 (setting forth the correct procedures for supplementing the certified record on appeal).

the closing arguments be made. As a result, the court reporter did not automatically transcribe those arguments, since under our rules of judicial administration he was under no obligation to do so. *See* Pa.R.J.A. 5000.2(g) ("[O]pening or closing statements of counsel ... shall be recorded, but not transcribed, unless otherwise ordered.").

¶ 40 We cannot find trial counsel to have been ineffective solely on the basis of his failure to order the transcripts since, as the Trial Court has noted, in the post trial motions which trial counsel filed he did not raise the issue of any defect in his closing argument nor did he assert his own ineffectiveness for making an improper closing argument and seek leave to withdraw. Thus, trial counsel had an objectively reasonable basis for not ordering the transcripts of his closing arguments since they were not relevant to the issues which he had raised in his post verdict motions. Since counsel had a reasonable basis for his actions he cannot be deemed ineffective. *Statum, supra. C.f. Commonwealth v. Logan,* 468 Pa. 424, 432, 364 A.2d 266, 270 (1976) (trial counsel not ineffective for failing to order transcript of suppression hearing in view of trial counsels' judgment that suppression ruling should not be appealed).

¶ 41 Because current counsel raised this issue concerning trial counsel's closing argument in his statement of matters complained of on appeal, the Trial Court commendably attempted to see if the court reporter could create the transcript prior to the submission of the certified record and its Rule 1925 Opinion to our Court. However, after investigation, the Trial Court determined that due to the passage of time since Appellant's trial the records of the closing arguments have been destroyed and no transcript can now be generated. *See* Trial Court Opinion, *supra,* at

14. *See also* Affidavit of Court Reporter, attached to Trial Court Opinion as Exhibit A.

¶ 42 In situations such as this where a transcript of trial proceedings cannot be created, our rules of appellate procedure provide a specific procedure by which a statement in lieu of a transcript may be constructed to enable appellate review. Pa.R.A.P.1923 provides:

### Rule 1923. Statement in Absence of Transcript.

If no report of the evidence or proceedings at a hearing or trial was made, *or if a transcript is unavailable,* the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal.

Pa.R.A.P.1923 (emphasis supplied). The purpose of Rule 1923 is to provide reviewing courts with an equivalent picture of the proceedings if they have not been transcribed. *Commonwealth v. Buehl,* 403 Pa.Super. 143, 588 A.2d 522, 524, n. 7 (1991). We note that the certified record in this matter does not reflect any attempt by Appellant, through current counsel, to prepare a statement pursuant to Pa.R.A.P. 1923 to provide us with an equivalent picture of trial counsel's closing argument to the jury. Thus, we have nothing by which we may evaluate Appellant's claim of trial counsel's ineffectiveness in making his closing argument, since we do not know what was said in that closing argument.

¶ 43 Our Court was previously confronted with a similar situation in the case of *Commonwealth v. Rovinski*, 704 A.2d 1068 (Pa.Super.1997). In *Rovinski*, the appellant was convicted of multiple counts of attempted murder, aggravated assault and related offenses in connection with a mass shooting spree at a newspaper where he was employed. Appellant was provided with new counsel for the purposes of appeal. Newly appointed counsel raised an issue relating to the effectiveness of trial counsel with respect to statements trial counsel had made in his opening argument to the jury. Appointed counsel argued *inter alia* that trial counsel was ineffective for conceding in the opening statement appellant's guilt to all charges except for attempted homicide. Trial counsel's opening statements to the jury were not transcribed. Appointed counsel made no effort to supplement the record pursuant to the procedures set forth in Pa.R.A.P.1923. Because our Court was not provided with a record of the opening statements, we could not proceed to review the merits of this claim and instead our Court was forced to deem the issue waived.

¶ 44 Our Court stated:

It is appellant's duty to supply this court "with a record which is sufficient to permit a meaningful appellate review." *Boyle v. Steiman*, 429 Pa.Super. 1, 11, 631 A.2d 1025, 1030 (1993). Failure to ensure that the record provides sufficient information to conduct a meaningful review "constitutes waiver of the issue sought to be reviewed." *Id.* Where portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures. See Pa.R.A.P.1923. Appellant has made no effort to utilize these procedures. Because appellant has failed to provide a sufficient record for us to review his claim of ineffective assistance of counsel relating to the opening statements, that claim is waived.

*Id.* at 1073. *See also Commonwealth v. Burrows*, 379 Pa.Super. 548, 550 A.2d 787 (1988) (where no attempt whatsoever was made by appellate counsel to reconstruct an equivalent record of the trial proceeding pursuant to Pa.R.A.P.1923 our Court found issues raised on direct appeal waived since appellant's right to meaningful appellate review had not been denied; appellate counsel could and should have availed himself of the procedures set forth in Pa. R.A.P.1923 to construct an equivalent record of the trial proceedings)

¶ 45 We are therefore constrained by the holdings of *Rovinski* and *Burrows* to deem the issue of whether trial counsel rendered ineffective assistance of counsel in making his closing argument to the jury waived in this direct appeal proceeding. However, this waiver is without prejudice to Appellant's rights to properly raise this issue again in a P.C.R.A. proceeding. *See Burrows, supra,* 550 A.2d at 790.

¶ 46 Having thoroughly reviewed all of Appellant's claims and finding that none warrant relief, we must affirm Appellant's judgment of sentence. Judgment of Sentence affirmed.