J-S50029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| YVONNE ICAN BRADLEY, | : | |
| | : | |
| Appellant | : | No. 305 WDA 2014 |

Appeal from the Judgment of Sentence Entered February 13, 2014,
In the Court of Common Pleas of Fayette County,
Criminal Division, at No. CP-26-CR-0000112-2013.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and ALLEN, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED OCTOBER 06, 2014**

Appellant, Yvonne Ican Bradley, appeals from the judgment of

sentence entered following her convictions of theft by deception, receiving

stolen property, forgery, and tampering with records.  We affirm.

The trial court summarized the factual history of this case as follows:

> In November, 2012, Officer John M. Kauer of the
> Uniontown Police Department ("UPD") was engaged in
> investigation of an unrelated matter when he learned that a gray
> GMC Yukon, stolen in Pittsburgh, might be present in Fayette
> County.
>
> The vehicle was reported stolen by Mrs. Paula Thorpe, to
> whom its title had recently been transferred.  Mrs. Thorpe
> testified that, on July 5, 2012, while searching Craigslist, she
> came across a 2007 GMC Yukon for sale.  Mrs. Thorpe responded
> to the ad by email with her contact information.  Within two
> hours, she received a phone call from an individual, identified as
> "Michelle Jorry."  Mrs. Thorpe, along with her husband, agreed to
> meet Jorry at the Uniontown Sunoco Station, at around 7:00

o'clock p.m. Mrs. Thorpe identified [Appellant] as the person who met the Thorpes at the Sunoco, and who called herself Michelle Jorry.

[Appellant] informed the Thorpes that she was a home healthcare aid, which was believable because she wore scrubs and a tag identifying herself as Michelle Jorry. She claimed to have purchased the Yukon the year prior at an auto auction. Her asserted reason for selling the Yukon was that she had recently lost everything she owned in a fire and needed money. She claimed the title to the vehicle was new, the original having also been destroyed by the fire. [Appellant] indicated she would take "ten or eleven thousand" for the Yukon.

In the dash compartment, Mrs. Thorpe noticed a window sticker of the type usually appearing in new vehicles. Using the VIN appearing on that sticker, she ran a Carfax report and contacted the DMV. Those sources returned results for a 2007 GMC Yukon, and came up clear of any accidents or reports of theft. The next day, Mrs. Thorpe again met [Appellant] at the Sunoco, placing a $3,800.00 cash down payment. Mrs. Thorpe was able to get an additional $6,000.00 from her mother, for a total of $9,800.00, which [Appellant] accepted as final payment.

After taking possession of the Yukon, Mrs. Thorpe removed its title, bearing a notary stamp and the name "Michelle Jorry," from the dash compartment. She then took the title to a notary, Tina Dennis, to transfer the same. Mrs. Thorpe executed a bill of sale and pink slip, and left the matter with Ms. Dennis' office. Sometime in late August, Mrs. Thorpe learned that Ms. Dennis could not transfer the title.

Ms. Dennis testified that, in her opinion, the facts and circumstances of this case demonstrated that the title provided to Mrs. Thorpe was a fake. Ms. Dennis noted, the title bore the notary seal of "Maryann Maiolo."

Following his meeting with Mrs. Thorpe, Officer Kauer ran both the vehicle's registration and VIN through N.C.I.C. The VIN, having been recently transferred, returned to Mrs. Thorpe. The registration, however, indicated that the vehicle was indeed stolen and belonged to Jesse Virgin.

In May or June, 2012, Mr. Virgin posted the Yukon on Craigslist for $25,000.00. He received several calls from an individual interested in purchasing the vehicle. That person, who came to be known as "Audrey Merkel," said she worked for P&W foreign car dealership, of Pittsburgh, and asked Mr. Virgin to meet her there in the evening. Mr. Virgin identified [Appellant] as the person calling herself Audrey Merkel, and stated that he recognized her voice from the phone calls. [Appellant] handed Mr. Virgin a check for $25,000, at which time he handed her the keys. Mr. Virgin stated that the title could only be transferred after he used the money to pay off the loan on the vehicle.

Maureen Lucas, the officer manager at P&W testified that, while Audrey Merkel was a real employee, [Appellant] was not Audrey Merkel. Though she had only seen [Appellant] one time at P&W, Ms. Lucas was able to identify her as a member of the cleaning staff. Around the end of June, Ms. Lucas became aware of an unauthorized check for $25,000, bearing forged signatures, which had cleared P&W's bank account. The check's number was 7698 and was made out to Jesse Virgin. After speaking with Mr. Virgin, Ms. Lucas contacted the bank and the police.

[Appellant] was arrested sometime later, during which time her purse was taken by Uniontown Police and transferred to Officer Jamie Holland. Officer Holland inventoried the bag and provided lengthy testimony of its contents. Officer Holland catalogued, *inter alia*, $5,237.00 in cash, an identification card bearing the name "Michelle Jorry," and a black bag containing four USB flash drives.

The flash drives were analyzed by PSP Trooper Donald Lucas. Trooper Lucas is a member of the Bureau of Criminal Investigation, computer crimes unit, and was recognized as an expert in the field of forensic analysis of digital devices. His investigation uncovered twenty-two files, all of which were converted to twenty-four image printouts. Those printouts depicted, in relevant part: (1) a title bearing the name "Michelle Jorry,"; (2) a check, numbered 7698, made out to Jesse Virgin, for $25,000; (3) an image, titled "07 Yukon,"; (4) a PDF of a notarial seal for Maryann Maiolo; (5) a blank back page of a Pennsylvania vehicle title, bearing Maryann Maiolo's same

notarial seal; and, (6) an image matching the image that appeared on the badge [Appellant] wore while meeting the Thorpes.

Trooper Lucas opined that many of the noted documents bore clear evidence of electronic forgery or were formatted in ways that would make forgery a relatively simple task.

Trial Court Opinion, at 2-6.

Following a jury trial, Appellant was found guilty of theft by deception, receiving stolen property, forgery, and tampering with records. No post-trial or post-sentence motions were filed. Appellant filed this timely appeal and, pursuant to court order, filed a Pa.R.A.P. 1925(b) statement.

Appellant presents the following issues for our review:

1. Did the court err when it failed to grant Appellant's motions for mistrial based upon the Commonwealth introducing evidence of other crimes, specifically the reference to checks possibly stolen from P & W Motors?

2. Did the court err when it failed to grant Appellant's motions for judgment of acquittal as to the forgery and tampering with documents charges. Specifically, that the Commonwealth did not prove beyond a reasonable doubt that Appellant forged or tampered with the documents in the instant case?

3. Did the Commonwealth fail to establish Appellant['s] guilt beyond a reasonable doubt that Appellant was the person that purchased the vehicle from Mr. Virgin or had ever been to P & W Motors?

Appellant's Brief at 7.

Appellant first asserts that the trial court erred when it failed to grant Appellant's motions for mistrial. Appellant's Brief at 10.

It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused." A trial court may grant a mistrial only "where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011) (internal citations omitted).

Appellant argues that the trial court erred in denying her motion for a mistrial based on the prosecutor's comments during opening statement that "there were 100 checks stolen from P&W Motors and that Mr. Virgin had received a stolen check." Appellant's Brief at 10. Appellant maintains that because she was not charged with theft of the checks or receiving stolen property for the checks, such thefts should not have been referenced as they constitute prior uncharged bad acts. *Id.* at 10-11. Appellant claims that evidence of the stolen checks did not relate to the crimes charged. *Id.* at 11.

A review of the record reflects that Appellant made a motion for mistrial following the prosecutor's opening statement. N.T., 2/3/14, at 7-8. The notes of testimony, however, do not include the prosecutor's opening statement. *Id.* at 7. Instead, a simple notation indicates:

"(Commonwealth's opening statement given by Miss Kelley)." *Id.* Following that notation is a discussion among the attorneys and the trial court as to what was actually said in referencing those stolen checks, indicating that there was some uncertainty or disagreement as to the specific statements made to the jury. *Id.* at 7-8.

Because we are unable to review the prosecutor's opening statement, we have no way of knowing what the prosecutor actually said during her opening statement. In addressing a lack of notes of testimony necessary for appellate review, our Supreme Court has stated the following:

> Rule 1911(a) of the Pennsylvania Rules of Appellate Procedure provides that "[t]he appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5000.1 et seq. of the Pennsylvania Rules of Judicial Administration (court reporters)." Of course, if a party is indigent, and is entitled to taxpayer-provided transcripts or portions of the record, he will not be assessed costs. But, that does not absolve the appellant and his lawyer of his obligation to identify and order that which he deems necessary to prosecute his appeal. The plain terms of the Rules contemplate that the parties, who are in the best position to know what they actually need for appeal, are responsible to take affirmative actions to secure transcripts and other parts of the record. *See, e.g., Commonwealth v. Steward*, 775 A.2d 819, 833 (Pa. Super. 2001) (noting that it was not the responsibility of the trial court to order the notes of transcript of defense counsel's closing as Rule 1911 "makes it abundantly plain that it is the responsibility of the Appellant to order all transcripts necessary to the disposition of his appeal."); *Commonwealth v. Peifer*, 730 A.2d 489, 492 n. 3 (Pa. Super. 1999) (explaining that it is the responsibility of the appellant and not the court to provide a complete record for review, including any necessary transcripts).

*Commonwealth v. Lesko*, 15 A.3d 345, 410 (Pa. 2011).

In *Steward*, this Court was presented with an instance, similar to that herein, where counsel's closing statement had not been transcribed, and the appellant's challenge was based on the substance of that closing statement. *Steward*, 775 A.2d at 833. We explained that although counsel requested transcripts, he did not specifically order a transcript of the closing arguments. *Id.* at 833-834. As a result, the court reporter did not automatically transcribe those arguments because, under our rules of judicial administration, he was under no obligation to do so. *Id.* at 834; *See also* Pa.R.J.A. 5000.2(g) ("[O]pening or closing statements of counsel ... shall be recorded, but not transcribed, unless otherwise ordered."). Without a transcription of the closing statement, this Court concluded it was unable to address the appellant's claim, and therefore found it waived. *Steward*, 775 A.2d at 835.

In the case *sub judice*, Appellant's motion for mistrial was based on statements made in the prosecutor's opening statement. Without the transcript of that statement, however, we cannot address Appellant's claim that the trial court abused its discretion in denying her motion for mistrial. Rule 1911 makes it abundantly plain that it is the responsibility of the appellant to order all transcripts necessary to the disposition of his appeal. *Commonwealth v. Reed*, 971 A.2d 1216, 1219 (Pa. 2009) (stating that

"[i]t is an appellant's duty to ensure that the certified record is complete for purposes of review.") Appellant has failed to provide us with the transcript necessary to the disposition of her claim, and as a result, we are precluded from addressing Appellant's claim for relief. [1]

We also note that although Appellant was permitted to proceed *in forma pauperis* ("IFP"), she was not thereby absolved of her duty to identify and order that which she deemed necessary to prosecute her appeal. ***Lesko***, 15 A.3d at 410. Because Appellant has failed to provide us with the information upon which we may evaluate her claim that the prosecutor's statements unfairly prejudiced her, we are constrained to conclude that this issue is waived. ***Steward***, 775 A.2d at 835 ("[f]ailure to ensure that the record provides sufficient information to conduct a meaningful review constitutes waiver of the issue sought to be reviewed.").

Appellant next argues that the Commonwealth failed to prove beyond a reasonable doubt that Appellant forged or tampered with the documents in this case. Appellant's Brief at 13. Specifically, Appellant argues, that the

---

[1] We also note that the record reflects no attempt by Appellant to include a statement pursuant to Pa.R.A.P. 1923 (providing that where no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant's burden to supply a record **may** be satisfied through a statement in absence of transcript procedures). We are mindful, however, that a statement pursuant to Pa.R.A.P. 1923 may not have been sufficient under the facts of this case given that the specific statements made by the prosecutor, in the presence of the jury, would be necessary to review the claim in this case.

Commonwealth established only that Appellant was in possession of a flash

drive that contained altered documents, but failed to present any evidence

that Appellant was the individual who had altered or created these

documents. *Id.* at 14. At the conclusion of the Commonwealth's case,

Appellant's counsel made a motion for judgment of acquittal with regard to

these charges. *Id.* at 13. Appellant asserts that the trial court erred when

it failed to grant that motion. *Id.*

"A motion for judgment of acquittal challenges the sufficiency of the

evidence to sustain a conviction on a particular charge, and is granted only

in cases in which the Commonwealth has failed to carry its burden regarding

that charge." *Commonwealth v. Foster*, 33 A.3d 632, 635 (Pa. Super.

2011). Our standard of review when considering a challenge to the

sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the
> evidence is whether viewing all the evidence admitted at trial in
> the light most favorable to the verdict winner, there is sufficient
> evidence to enable the fact-finder to find every element of the
> crime beyond a reasonable doubt. In applying the above test,
> we may not weigh the evidence and substitute our judgment for
> the fact-finder. In addition, we note that the facts and
> circumstances established by the Commonwealth need not
> preclude every possibility of innocence. Any doubts regarding a
> defendant's guilt may be resolved by the fact-finder unless the
> evidence is so weak and inconclusive that as a matter of law no
> probability of fact may be drawn from the combined
> circumstances. The Commonwealth may sustain its burden of
> proof or proving every element of the crime beyond a reasonable
> doubt by means of wholly circumstantial evidence. Moreover, in
> applying the above test, the entire record must be evaluated and

all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Lehman***, 820 A.2d 766, 772 (Pa. Super. 2003).

Appellant was convicted of forgery, as defined at 18 Pa.C.S. § 4101(a)(2):

**§ 4101. Forgery**

**(a) Offense defined.**--A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

\* \* \*

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed;

18 Pa.C.S. § 4101(a)(2).

Appellant was also convicted of tampering with records, as defined at 18 Pa.C.S. § 4104(a):

**§ 4104. Tampering with records or identification**

**(a) Writings.**--A person commits a misdemeanor of the first degree if, knowing that he has no privilege to do so, he falsifies, destroys, removes or conceals any writing or record, or distinguishing mark or brand or other identification with intent to deceive or injure anyone or to conceal any wrongdoing.

18 Pa.C.S. §4104(a).

With regard to the charge for forgery, the evidence of record supports the conclusion that Appellant, with the intent to defraud, executed the unauthorized check from P&W Motors and presented it to Jesse Virgin for purposes of obtaining the GMC Yukon. N.T., 2/3/14, at 17, 20. By doing so, Appellant purported to be an agent of P&W Motors and acted on its behalf when she did not have the authority to do so. *Id.* at 83-84. Viewing the evidence admitted at trial in the light most favorable to the Commonwealth, we conclude that the Commonwealth produced evidence sufficient to establish beyond a reasonable doubt that Appellant was guilty of forgery. Thus, the jury's determination was supported by evidence of record.

Again viewing the evidence in the light most favorable to the Commonwealth, we also conclude that the Commonwealth produced evidence sufficient to establish the elements of tampering with records beyond a reasonable doubt. The evidence established that Appellant presented herself to the Thorpes as Michelle Jorry and provided the Thorpes with a falsified Pennsylvania certificate of title for the vehicle, indicating that Michelle Jorry had title to the vehicle. N.T., 2/3/14, at 58, 111, 120-122, 126. This falsified document was included on the flash drive found on Appellant's person. N.T., 2/3/14, at 43, 67; N.T., 2/5/14, at 140-141, 145, 149.

Appellant contends that such evidence was insufficient to establish that Appellant altered the documents. Appellant's Brief at 14. We disagree. The fact that no evidence was produced showing specifically that Appellant was the individual who had created those documents, does not render the jury's findings unsubstantiated. The evidence established Appellant's direct involvement with the altered record, specifically her providing the fake title to Mrs. Thorpe. Additionally, these altered documents were found on a flash drive in Appellant's possession. Such evidence was sufficient to allow the jury to determine that it was Appellant who had altered these records. The Commonwealth may establish elements of a crime by wholly circumstantial evidence. *Lehman*, 820 A.2d at 772. As such, the trial court did not err in denying Appellant's motion for acquittal.

In her final argument, Appellant maintains that the Commonwealth failed to establish beyond a reasonable doubt that she was the person who purchased the vehicle from Mr. Virgin, or had ever been to P&W Motors. Appellant's Brief at 15. Appellant claims that Mr. Virgin was able to identify her as the individual who bought the car only after seeing her identified as the "defendant" at the preliminary hearing and during the course of the trial. *Id.*

Jesse Virgin testified that he had posted his 2007 GMC Yukon on Craigslist for sale for $25,000.00, which was based on the Kelly Bluebook

value.  N.T., 2/3/14, at 10, 12.  He received approximately three or four phone calls from a single individual, who was inquiring about the vehicle and trying to set up a time to see the vehicle.  *Id.* at 13.  The individual inquiring about the purchase of the vehicle identified herself as Audrey Merkel and indicated that she worked for P&W Motors dealership.  *Id.* at 16-17.  The individual made plans for Mr. Virgin to meet her at P&W Motors for the sale of the vehicle.  *Id.* at 16.  He testified that the voice of the person that he met at P&W Motors matched the voice of the individual with whom he spoke on the phone.  *Id.* at 14.  Appellant, identifying herself as Audrey Merkel, presented Mr. Virgin with a dealership's check in the amount of $25,000.00.  *Id.* at 20.  At trial, Mr. Virgin identified Appellant as the person who had purchased his GMC Yukon at P&W Motors.  *Id.* at 19.

We find Appellant's argument that the Commonwealth failed to prove beyond a reasonable doubt that Appellant was the individual who sold the car to Mr. Virgin to be unpersuasive.  In his testimony, Mr. Virgin unwaveringly identified Appellant as the woman who had purchased his vehicle.  On cross-examination he stated that he spent approximately ten-to-fifteen minutes with her during this exchange and confirmed that Appellant was the woman he met at P&W Motors.  N.T. 2/3/14, at 24.  Thus, there was sufficient evidence upon which the jury could determine that Appellant was in fact the individual who had "purchased" Mr. Virgin's vehicle.

Similarly, Appellant argues that there was insufficient evidence to establish beyond a reasonable doubt that Appellant was the individual who Ms. Lucas saw at the dealership. Ms. Lucas, Office Manager for P&W Motors, testified to having seen Appellant at the dealership on one prior occasion. N.T., 2/3/14, at 29. Ms. Lucas stated that Appellant had worked for a cleaning company that P&W Motors had employed, and that she saw Appellant on a Friday evening as Ms. Lucas was leaving the dealership. *Id.*

Proof that Ms. Lucas saw Appellant at the dealership was not necessary, in and of itself, to satisfy the elements of the crimes with which Appellant was charged. Such testimony, however, was circumstantial evidence that the jury could rely upon in making a fact determination as to Appellant's guilt in this case. Thus, we cannot agree with Appellant's claim that the Commonwealth did not meet its burden of proof with regard to identifying Appellant as the actor in this case.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/06/2014