J-S53017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JAMES WALTER ZERBY, III | |
| Appellant | No. 68 MDA 2015 |

Appeal from the Order Entered September 25, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003196-2012

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                   **FILED SEPTEMBER 09, 2015**

James Walter Zerby, III, appeals from the judgment of sentence imposed on September 25, 2013, in the Court of Common Pleas of Luzerne County, as made final by the order of October 15, 2014, which designated him a sexually violent predator (SVP).  On September 25, 2013, Zerby entered a no contest plea to one count of unlawful contact with a minor[1] pursuant to a plea agreement, and the trial court immediately sentenced him to three to ten years' incarceration in accordance with the plea agreement.[2]  An SVP hearing was held on March 10, 2014, and September

---

[1] 18 Pa.C.S. § 6318(a)(1).

[2] Zerby waived his right to have the SVP hearing held prior to sentencing. **See** N.T., 9/25/2013, at 3–4.

22, 2014. By order entered October 15, 2014, the trial court determined Zerby was an SVP. The sole issue involved in this appeal is a challenge to the SVP determination. Concomittantly, counsel has filed a petition seeking leave to withdraw from representation and brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Based upon the following, we affirm on the sound basis of the trial court opinion, and grant the petition for leave to withdraw.

Prior to addressing the merits of issues raised on appeal, we must review counsel's petition to withdraw. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) ("Initially, we note that we may not address the merits of the issue raised on appeal without first reviewing the request to withdraw."). The procedural requirements for withdrawal require counsel to:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Id.* at 1032.[3] Further, in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), the Pennsylvania Supreme Court addressed the second requirement

---

[3] Zerby has not filed a response to counsel's *Anders* brief and petition to withdraw.

of *Anders* — the contents of the *Anders* brief — and held that the brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Cartrette, supra* at 1032, *citing* *Santiago, supra* at 361.

Our review confirms counsel has complied with the requirements of *Anders* and *Santiago*. Furthermore, counsel has attached to the petition a copy of the letter she provided to Zerby, advising him of his rights to proceed *pro se* or retain a private attorney, and states counsel's intention to petition the court to withdraw. *See Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005) ("[T]he prudent course is to require counsel henceforth to attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."). Therefore, we now proceed "to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Commonwealth v. Flowers*, 113 A.3d 1246, 1248 (Pa. Super. 2015). In so doing, we review not only the issues identified by appointed counsel in the *Anders* brief, but examine all of the proceedings to "make certain that appointed counsel has not overlooked the existence of potentially non-frivolous issues." *Id.* at 1249.

The issue discussed in the **Anders** brief is

> [w]hether the trial court erred by finding that Mr. Zerby is a sexually violent predator where the Commonwealth failed to present clear and convincing evidence sufficient to demonstrate that he is likely to engage in predatory sexually violent offenses?

**Anders** Brief at 2.[4]  With regard to this issue, we note:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

**Commonwealth v. Hollingshead**, 111 A.3d 186, 189 (Pa. Super. 2015) (citation omitted).

The trial court has authored a thorough, well-reasoned opinion in which the court sets forth the relevant case law and statute, discusses the

_____

[4] Zerby timely complied with the order of the trial court to file a statement of errors complained of on appeal, pursuant to Pa. R.A.P. 1925(b), identifying the following issue:

> Whether the trial court erred by finding that Mr. Zerby is a sexually violent predator where the Commonwealth failed to present clear and convincing evidence sufficient to demonstrate that he is likely to engage in predatory sexually violent offenses? Specifically, the Commonwealth failed to present evidence sufficient to establish Mr. Zerby's "likelihood of re-offense" and "mental abnormality" from which Mr. Zerby suffers.

Zerby's Concise Statement of Errors Complained of on Appeal Purusant to Pa.R.A.P. 1925(b).

Commonwealth's evidence, specifically, the expert testimony presented by the Commonwealth, recounts the testimony offered by Zerby's expert, and concludes Zerby's claim lacks merit. *See* Trial Court Opinion, 1/8/2015, at 6–12 (finding, *inter alia,* (1) Commonwealth's expert's opinion that Zerby met the criteria for a SVP took into consideration statutory factors and factual context, specifically: that victim was Zerby's step-daughter, and she indicated he sexually abused her for three years, beginning at age 7; that the age of the victim while the offenses occurred, seven through ten, when she was involved in an incestuous relationship with Zerby, is consistent with the paraphilic interest of the offender in nonconsenting individuals, and that condition goes to the risk of reoffending; that Zerby met the diagnostic criteria of pedophilia; that this condition overrode Zerby's control, and there appeared to be a likelihood of re-offense; that Zerby's relationship enabled him to be in a caretaking and babysitting activity to eventually groom and then sexually molest the child over three years; that Zerby's behavior escalated over time with regard to different sexual activities; and that Zerby utilized his relationship with the victim to maintain her secrecy, (2) after consideration of the parties' respective experts, within the context of the record created during the guilty plea proceeding to present, the Commonwealth established by clear and convincing evidence that Zerby is an SVP; (3) in assessing the expert testimony, the Commonwealth's expert was frank and credible, and his conclusions regarding the relevant criteria were persuasive and supported by the record; Zerby's expert was

unpersuasive in his use of a statistical tool in arriving at the conclusion that Zerby would not be likely to reoffend.) We agree with the sound reasoning of the trial court.

Based on our review of the record, we conclude that a challenge to the the SVP determination in this case would be frivolous. Additionally, we discern no other potentially non-frivolous issues. Accordingly, we affirm and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2015

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL DIVISION– LAW |
| | : | |
| vs. | : | |
| | : | |
| JAMES WALTER ZERBY III, | : | |
| | : | |
| Defendant | : | No. 3196 OF 2012 |

## ORDER

AND NOW, this _____ day of January 2015, it is hereby ORDERED, ADJUDGED AND DECREED:

1. The Clerk of Courts of Luzerne County is ORDERED AND DIRECTED to serve a copy of this Order and Opinion on all Counsel of Record pursuant to Pennsylvania Rule of Criminal Procedure No. 114.

2. The Clerk of Courts of Luzerne County is ORDERED AND DIRECTED to docket this Order and Opinion and to forthwith transmit same to the Superior Court of Pennsylvania.

BY THE COURT:

LESA S. GELB, JUDGE

CLERK OF COURTS

2015 JAN -8 PM 3:58

RECEIVED
JAN 13 2015

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY

| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL DIVISION- LAW |
|---|---|---|
| | : | |
| vs. | : | |
| | : | |
| JAMES WALTER ZERBY III, | : | |
| | : | |
| Defendant | : | No. 3196 OF 2012 |

OPINION

## Procedural History

On September 2, 2013, James Walter Zerby III, hereinafter known was Defendant, pled no contest to unlawful contact with a minor and as a result, this Court requested the Pennsylvania Sexual Offender Assessment Board to do an evaluation and assessment.

After receipt of Pennsylvania Sexual Offender Assessment Board report sent March 15, 2013, the Commonwealth praeciped this Court to certify the Defendant a sexually violent predator (SVP).

A hearing was held on March 10, 2014 at which time testimony was taken from the Commonwealth's expert, David Humphries, a licensed clinical social worker. Testimony was taken of the Defendant's expert, Dr. Timothy Foley on September 22, 2014.[1]

On October 15, 2014, the undersigned entered an Order finding by clear and convincing evidence the Defendant was a Sexually Violent Predator.

[1] The Court notes that the Defendant necessarily changed counsel in that his first counsel's license has been suspended and that necessitated several continuances until the second part of the hearing could take place.

2

An appeal was filed on November 14, 2014 and an Order issued pursuant to P.R.A.P. 1925 (b) on November 17, 2014. Thereafter, the concise statement was subsequently received on December 4, 2014, with the Commonwealth's response on December 15, 2014.

Appellate counsel's allegation of error posits the following:

> Whether the trial court erred by finding that Mr. Zerby is a sexually violent predator where the Commonwealth failed to present clear and convincing evidence sufficient to demonstrate that he is likely to engage in predatory sexually violent offenses. Specifically, the Commonwealth failed to present evidence sufficient to establish Mr. Zerby "likelihood of re-offense" and any "mental abnormality" from which Mr. Zerby suffers.

In Commonwealth v. Martz, 926 A.2d 514 (Pa. Super. 2007) Superior Court examined appellant's argument that the trial court erred in concluding he was a sexually violent predator where the determination was predicated upon expert conclusions based on facts not in the record or blatantly incorrect. The Superior Court opinion sets forth a template or framework within which sufficiency arguments in this context must be considered. We have inserted in brackets the most recent numbering of the applicable statutory provisions for ease of reference.

> In reviewing the sufficiency of evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the Commonwealth has been satisfied. Commonwealth v. Haughwout, 837 A.2d 480, 484 (Pa. Super. 2003)

> We conclude that ample evidence was presented by the Commonwealth to prove Appellant is an SVP. Under Pennsylvania's Megan's Law III, 42 Pa. C.S.A. [§9799.10-.40], an SVP is defined as "a person who has been convicted of a sexually violent offense [...] and who is determined to be a sexually violent predator under section [9799.24] [...] due to mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent

3

offenses." 42 Pa. C.S.A. [§9799.12], Definitions. Mental abnormality is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." Id. Moreover, predatory is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." Id.

The statute specifically details the process by which an individual is determined to be an SVP. After an individual is convicted of an enumerated offense under section [9799.14], Registration, the trial court must order the State Sexual Offenders Assessment Board ("Board") to determine whether the individual qualifies for SVP classification. See 42 Pa. C.S.A. [9799.24], Assessment. An administrative officer of the Board then assigns one of its members to conduct an assessment. The determination of whether an individual should be classified as an SVP is governed by examination of the following factors:

(1)  Facts of the current offense, including:

   (i)    Whether the offense involved multiple victims.

   (ii)   Whether the individual exceeded the means necessary to achieve the offense.

   (iii)  The nature of the sexual contact with the victim.

   (iv)   Relationship of the individual to the victim.

   (v)    Age of the victim.

   (vi)   Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

   (vii)  The mental capacity of the victim.

(2)  Prior offense history, including:

   (i)    The individual's prior criminal record.

   (ii)   Whether the individual completed any prior sentences.

   (iii)  Whether the individual participated in available programs for sexual offenders.

4

(3)     Characteristics of the individual, including:

(i)     Age of the individual.

(ii)     Use of illegal drugs by the individual.

(iii)     Any mental illness, mental disability, or mental abnormality.

(iv)     Behavioral characteristics that contribute to the individual's conduct.

(4)     Factors that are supported in a sexual offender Assessment field as criteria reasonably related to the risk of reoffense.

[42 Pa. C.S.A. §9799.24]. Following the submission of a written assessment report and a praecipe filed by the district attorney, the trial court must hold a hearing. During the hearing, the Commonwealth bears the burden of proving the defendant is an SVP by clear and convincing evidence. [42 Pa. C.S.A. §9799.24 (e)(3)]; see also Commonwealth v. Charlton, 902 A.2d 554, 563-65 (Pa. Super.2006).

In the matter presently considered, Defendant entered a plea of no contest to the offense of Unlawful Contact with a Minor, an enumerated offense under 42 Pa. C.S.A. 9795.1 As previously indicated, a portion of the SVP hearing was conducted on March 10, 2014 at which the Commonwealth presented the expert testimony of David Humphries, an expert evaluator of the Sexual Offenders Assessment Board, who holds a masters degree in social work from the University of Pittsburgh and a bachelor of science in psychology and sociology per his resume. He is also a licensed clinical social worker in the Commonwealth of Pennsylvania and is also employed by Community Care Behavioral Health.

Additionally, he has been qualified and admitted as an expert in the Commonwealth of Pennsylvania.

5

During his testimony, David Humphries utilized a report he prepared, dated March 8, 2014.

In reviewing the factual context, David Humphries considered, that according to the records, the victim indicated she was Defendant's step-daughter and according to the victim, the Defendant began to sexually abuse her between the age of seven and ending when she was ten or eleven. ( Id. N.T. 9 )

In examining the statutory criteria David Humphries stated that although the offense did not involve multiple victims it did entail multiple types of sexual acts on repeated occasions over the length of three years.

The witness acknowledged the Defendant did no more than was necessary to achieve his offense; the Defendant was a step-father and these abusive circumstances took place while the Defendant was in a caretaker's role in the home (Id. N.T. 9)

David Humphries stated the age of the victim while the offenses were occurring seven through ten, when she was involved in an incestuous relationship with the Defendant and is consistent with the paraphillic interest of the offender since a child that age is a minor unable to consent to any sexual activity with an adult. This factor goes to the risk of re-offending. David Humphries testified that individuals with this type of history tend to utilize their position within the family or in a relationship in order to gain access to sexually molest victims. Individuals who sexually act out with incestuous behavior toward children often increase these types and amounts of sexual abuse against the victims over a period of time which is evident in this case. Individuals with this type of paraphillic condition may develop

intense paraphillic imagery and fantasies which can lead them to act against non-consenting individuals. These types of paraphillic conditions tend to be chronic and lifelong. (Id. N.T. 12,13)

Therefore, David Humphries' conclusion was the Defendant meets the diagnostic criteria of pedophilia. Individuals with this paraphillic focus often and involve themselves in sexual activities with prepubescent children usually under the age of thirteen. The diagnostic impression of these individuals per David Humphries is that these individuals often act on their urge with children, exposing themselves, genital touching, as well as other types of fondling activities, evident in this case. (Id.N.T. 13,14)

His finding was that in this case, Defendant had a congenital and/or acquired condition which is the impetuous to sexual offending and that this diagnostic impression is a lifetime condition and in this case the condition overrode the Defendant's emotional and volitional control. (Id. N.T. 14, 15)

Further, David Humphries testified there appears to be a likelihood of potential for sexual reoffending in the future and that in his opinion the Defendant had a mental abnormality. (Id. N.T. 15)

It appears from the record in examining the next statutory factor the witness acknowledged the Defendant did not display any unusual cruelty in the commission of the offense. It doesn't appear the Defendant used any excessive means of force or cruelty to have the victim comply with his sexual assaults against her. (Id. N.T. 9-10)

7

With regard to the mental capacity of the victim the record doesn't contain any information as to whether the victim suffers from any type of physical, mental or emotional disability.

The witness indicated the Defendant has a sexually deviant pathway to offending as his object of sexual interest is a minor child. Additionally, David Humphries noted the Defendant did not have a criminal history of sexual assault. (Id. N.T. 10)

In examining specific characteristics of the Defendant the witness noted Defendant was between the ages of thirty-five and thirty-eight to thirty-nine and his step-daughter age seven to ten. (Id. N.T. 11)

David Humphries further related he possessed no information indicating whether the Defendant was ever diagnosed with a mental illness.

The second statutory criteria involved predators' behavior per David Humphries. (Id. N.T. 15) Within Megan's Law predatory behavior is defined as:

> "an act directed at a stranger or a person
> with whom a relationship has been maintained,
> established, promoted, or initiated in whole or part
> for purposes of sexual victimization"

Upon David Humphries' review of the records it appears that the Defendant's relationship to the victim as step-father enabled him to be in a care taking and babysitting activity to eventually groom and then sexually molest the child over a three year period of time. The Defendant's behavior did escalate over time with regard to different types of sexual assault activities that took place. (Id. N.T. 15)

8

Defendant was seen by the victim as a trusted individual and the Defendant utilized his relationship to the victim to maintain her secrecy. (Id. N.T. 15, 16)

Therefore, it was David Humphries' opinion the Defendant's behavior does constitute a predatory act in that the relationship was initiated, established, maintained, promoted in whole or part to promote sexual victimization (Id. N.T. 15,16)

His final conclusion within a reasonable degree of certainty considering all the statutory factors within the PA Megan's Law Adam Walsh Act is that the Defendant met the criteria as a SVP based upon a review of the records. (Id. N.T. 16)

The defense offered the testimony of Timothy Foley on September 22, 2014. Dr. Foley possessed a PhD in psychology since 1998 and has been involved in the assessment and treatment of sex offenders as a licensed psychologist. Dr. Foley indicted he has testified twenty times in the Luzerne County with regard to expressing a sexually violent predator opinion as of September 22, 2014. (Id. N.T. 11)

This witness additionally indicated he employs an "actuarial tool" in evaluating the statutory criteria. He acknowledged that the Sexual Offenders Assessment Board is precluded from using this tool, however, he believes it is appropriate in conducting the evaluation. (Id. N.T. 23, 24). Dr Foley was permitted to testify as an expert in the field of "sexually violent predator assessments, evaluations, and treatment." (Id. N.T. 10,11)

This witness prepared a report dated September 8, 2014, admitted as Defendant's exhibit #1. He also looked at the fourteen factors associated with

9

evaluations of this sort for SVP in Pennsylvania to determine whether or not there is sufficient evidence for a mental abnormality or personality disorder that makes a person likely to perpetuate sexually violent acts in the future as well as whether or not it meets the statutory criteria for the predatory prong of the statute. (Id. N.T. 14)

Essentially, Dr. Foley agreed with the Commonwealth's expert regarding Defendant's diagnosis of pedophilia however, he expressed a further opinion that the diagnosis had certain modifiers which had certain risk implications. (Id. N.T. 17-18)

This witness stated that the defendant had a diagnosis of pedophilia with modifiers and the modifiers are important particularly in terms of understanding the risk, and the modifiers are nonexclusive. In other words, there was an attraction to adult females, based on his living with the victim's mother for a number of years. Dr. Foley also based that on other factors which included his age. There was no non-sexual violence or prior non-sexual violence or prior sex offenses. The defendant's offense was limited to females. If it had been limited to males or included males, that would increase his risk per the witness. He testified further that it was an incest offense. It's an interfamilial offense, probably the most common kind of sexual offense and typically they go on longer, as seen in this case based on the records, but the risk following removal from the situations tends to be quite low. Interfamilial offenders or incest offenders atypically recidivate. Generally speaking, they have lower levels of measured sexual deviance. Nonetheless, he scored him for purposes of the actuarial tool he used for his analysis, as having an unrelated victim since he didn't know how long he lived with the victim. (Id. N.T. 24, 25)

The actuarial or statistical tool Dr. Foley used with Mr. Zerby is the Static-99R which compared him to a group of about twenty five thousand to thirty thousand sex offenders who have a known history of convictions and charges and also have a history in the community after they are released into the community (Id. N.T. 21, 22) The test Static – 99R has a range of minus three to twelve and on that scale Mr. Zerby had a minus one. Per Dr. Foley, scores of minus three to one are considered low risk based on this statistical analysis. (Id. N.T. 24) Dr. Foley agreed with Mr. Humphrey that he met the predatory prong of the statute but did not agree that he met the mental abnormality aspect of the statute. (Id. N.T. 30) Dr. Foley concluded that he found no evidence of a mental abnormality for Mr. Zerby because he did not find anything to suggest the Defendant is likely to perpetrate sexually violent offenses in the future. The fact that the misconduct stopped when the defendant left the home with no other misconduct reported until his arrest is evidence of his volitional control. (Id. N.T. 33)

Having had an opportunity to preside in this matter and after careful consideration of the testimony of the respective experts, within the context of the record created during the guilty plea proceeding to present, we reiterate our conclusion that the Commonwealth has established by clear and convincing evidence that the Defendant is, in fact, a sexually violent predator.

In assessing the expert testimony we observe the Commonwealth witness testified in a frank, credible and revealing manner. His conclusions regarding the criteria identified and considered were both persuasive and, in our judgment, supported by the record. While we did not find Dr. Foley testified in an

11

unprofessional manner or lacked credibility, we were un-persuaded in his use of a statistical tool in arriving at the conclusion that this Defendant would not be likely to reoffend.

It is beyond cavil that every Commonwealth expert who testifies that an individual is a sexual violent predator must examine, and render an opinion on, whether the individual is likely to reoffend. Commonwealth v. Dixon, 907 A.2d 533, 539 (Pa. Super. 2006) It is additionally well settled that pedophilia qualifies as a "mental abnormality" under the applicable legislation. Common v. Meals, 912 A.2d 213, 223 9Pa. 2006)

To reiterate, we found David Humphries credible, articulate, persuasive and well reasoned. The criteria examined on the record during the hearing, including the Commonwealth expert's diagnosis of pedophilia and paraphilia, unequivocally established by clear and convincing evidence that the Defendant is a sexually violent predator.

Before concluding, we note the applicable law by design provides no mathematical formula or calculation regarding the number of criteria present or absent which then dictate or require a certain conclusion. Indeed such a formulaic determination is inconsistent and antithetical to the concept of the assessment. Rather, as Martz instructs, the statutory scheme provides a framework and process in which an analysis must be conducted.

END OF OPINION

12

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0208111-2006

**FILED**

vs.     AUG 2 7 2014

Criminal Appeals Unit
First Judicial District of PA

                           : SUPERIOR COURT OF PENNSYLVANIA
BOBBY SHOWELL             :            142 EDA 2014

SUPPLEMENTAL OPINION

BRIGHT, J.

On October 21, 2005 Appellant was arrested and charged with Aggravated Assault, Possessing an Instrument of Crime, Unlawful Restraint, Endangering the Welfare of Children, and Criminal Conspiracy, and on November 6, 2006 he entered a plea of *nolo contendere* and was found guilty of those crimes. On January 10, 2007 Appellant was sentenced to a lengthy term of imprisonment. Direct appeal was taken to the Superior Court of Pennsylvania and on November 1, 2007 the appeal was dismissed for counsel's failure to file a brief. On December 26, 2007 Appellant filed a Petition pursuant to the Post Conviction Relief Act[1] (hereinafter PCRA) and on December 1, 2008 the Court ordered that Appellant's appeal rights be reinstated *nunc pro tunc*. On December 4, 2008 Appellant filed Notice of Appeal to the Superior Court of Pennsylvania and on December 29, 2009 the Judgment of Sentence was affirmed. Appellant filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania and on September 8, 2010 the Petition was denied.

On January 11, 2011 Appellant filed the instant Petition pursuant to the PCRA *pro se* and PCRA counsel was appointed. On November 14, 2012 Appellant filed an Amended PCRA Petition

together with a Memorandum of Law and on May 26, 2013 the Commonwealth filed a Motion to Dismiss. On November 27, 2013 Notice pursuant to Pa.R.Crim.P. 907 was sent to Appellant and on December 20, 2013 the PCRA Petition was dismissed. This timely appeal followed on January 13, 2014.

Pursuant to Pa.R.A.P. 1925(b) Appellant was instructed to file a Statement of Errors Complained Of On Appeal. Appellant failed to respond to the Order and the Court issued a 1925(a) Opinion deeming all issues to be waived. Appellant then filed a Petition to Remand for the filing of a 1925(b) Statement in the Superior Court of Pennsylvania, and on July 18, 2014 the Superior Court of Pennsylvania granted Appellant's Petition and remanded the case to permit Appellant to file a 1925(b) Statement with instructions to the PCRA Court to prepare this Supplemental Opinion.

In his 1925(b) Statement, Appellant complains that the PCRA Court was in error in denying the PCRA Petition without an evidentiary hearing and that the PCRA Court was in error in denying his Amended PCRA Petition which raised multiple claims of ineffective assistance of counsel.

## FACTS

The facts are summarized in this Court's Opinion on direct appeal and set out in the Superior Court of Pennsylvania's Memorandum Opinion as follows.[1] After the death of her father, the Philadelphia Department of Human Services (DHS) determined that the mother of eight year old Complainant SS was not able to care for her and the minor child was placed in the care of Appellant, her uncle, and her grandmother, co-defendant Cheryl Showell, who resided at 7426

---

[1] *Commonwealth v. Bobby Showell*, No. 3437 EDA 2007

2

Gilbert Street, Philadelphia, PA. N.T.[2] 11/6/2006 @ 11. After numerous reports to DHS, Appellant and his co-defendant were instructed to take Complainant to St. Christopher's Hospital for evaluation. Id. @ 12. When she arrived at the hospital it was discovered that Complainant was in renal failure and had suffered a skull fracture. SS also had a subdural hematoma that required surgery to relieve the pressure on her brain. Additionally, SS presented with scars on her face and back, a massive bleeding ulcer which exposed muscle, and multiple other indicia of physical abuse. Id. @ 12-13. Her extensive injuries required that she be kept in the intensive care unit of the hospital for more than three weeks. Id.

Appellant admitted that he had caused the Complainant's injuries, explaining that it was proper 'discipline', and he graphically described the methods he used. Id. @ 14-17. He blamed SS for the severity of the punishment.

## DISCUSSION

Appellant complains that the Court was in error in denying the PCRA Petition without an evidentiary hearing and in denying his Amended PCRA Petition which raised multiple claims of ineffective assistance of counsel. These claims are without merit.

The standard of review when presented with a challenge to the ruling by the PCRA Court is whether the PCRA Court's ruling is supported by the record and is free of legal error. In *Commonwealth v. Loner*, 2003 PA Super, 836 A.2d 125 (Pa. Super. 2003), the Superior Court of Pennsylvania stated:

"Our standard of review for an order granting or denying post-conviction relief is limited to examining whether the court's determination is supported by evidence of record and

---

[2]N.T. refers to the Notes of Testimony at bench trial before the Honorable Gwendolyn N. Bright on November 6, 2006 and the Sentencing on January 10, 2007. The specific date to which reference is made follows the designation "N.T.".

3

whether it is free of legal error.

To obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. The law presumes that counsel was effective, and it is the petitioner's burden to prove otherwise. Counsel cannot be deemed ineffective for failing to pursue a meritless claim.

Trial counsel's strategic choices cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it. Furthermore, counsel's effectiveness cannot be evaluated in hindsight but must be examined in light of the circumstances as they existed at the pertinent time.

Counsel will not be deemed ineffective if any reasonable basis exists for his or her actions. Even if counsel had no reasonable basis for the course of conduct pursued, a defendant is not entitled to relief if he fails to demonstrate "prejudice" as that element is defined under Pennsylvania's ineffectiveness standard. In assessing a claim of ineffectiveness, when it is clear that the defendant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone without any further determination." *Commonwealth v. Loner*, 836 A.2d @ 132-133. (Citations and quotations omitted.)

In *Commonwealth v. Fitzgerald*, 2009 PA Super. 154, 979 A.2d 908, 910 (PA Super 2009), the

Superior Court of Pennsylvania reiterated:

"In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. This requires the petitioner demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. It is presumed that counsel is effective, and places upon the appellant the burden of proving otherwise. Counsel cannot be deemed ineffective for failing to pursue a meritless claim" (citing, *Commonwealth v. Payne*, 2002 PA Super 62, 794 A.2d 902 (PA Super 2002).).

Additionally, it is well settled that an evidentiary hearing on a PCRA Petition is not absolute.

*Commonwealth v. Wah*, 2012 PA Super 54, 42 A.3d 335 (Pa. Super. 2012) citing, *Commonwealth*

4

*v. Jordan*, 2001 PA Super 111, 772 A.2d 1011, 1014 (Pa.Super.2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. If it is clear that an allegation of ineffectiveness of counsel lacks merit an evidentiary hearing is not warranted. *Commonwealth v. Steward*, 2001 PA Super. 126, 775 A.2d 819 (Pa. Super. 2001). *Commonwealth v. Wah*, *supra*, 42 A.3d @ 338.

In the case *sub judice*, Appellant asserts multiple claims of ineffective assistance of counsel. Appellant first complains that trial counsel was ineffective for failing to allow him to read and sign his own answers on his *nolo contendre* plea form, and by instructing him to sign only the bottom of the form. This complaint is without merit.

In *Commonwealth v. Hickman*, 2002 PA Super 152, 799 A.2d 136 (Pa. Super 2002), the Superior Court of Pennsylvania reaffirmed that "allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *See also, Commonwealth v. Yager*, 454 Pa. Super. 428, 685 A.2d 1000 (Pa. Super. 1996). This principal applies equally to pleas of *nolo contendre*. Instantly, the record amply demonstrates that Appellant's plea was knowingly, intelligently, and voluntarily entered.

> "[W]here the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may … contradict statements made when he pled." *Commonwealth v. McCauley*, 797 A.2d 920, 2001 (Pa. Super. 2001).

Prior to accepting Appellant's plea, the Court conducted an extensive colloquy with the Appellant, making certain that he understood the nature of the plea, the nature of charges to which he pled, and the various rights that he was waiving by pleading *nolo contendere*. Id. @ 5-20. The Court

5

specifically asked if Appellant had the opportunity to discuss the charges to which he pled with his attorney and if he was satisfied with his attorney's representation and Appellant responded in the affirmative. Appellant stated that he understood his rights and that he was voluntarily waiving his rights and pleading no contest. Id. The Court provided Appellant additional time to consult with his attorney to make certain that he understood his plea and inquired if Appellant understood, if he had signed the written colloquy form, and if he signed the form of his own free will. Id. @ 4-5. Appellant again responded in the affirmative. Id. @ 5. Appellant is bound by the statements he made during his plea colloquy and he cannot now contradict those statements. *Commonwealth v. McCauley, supra.* Error was not committed.

Moreover, it cannot be gainsaid that counsel was ineffective for not seeking 'additional information' regarding Appellant's mental condition during the colloquy. The Record clearly demonstrates that Appellant fully understood the purpose for his presence in court, the nature of the proceedings, and the nature of his plea of *nolo contendere.* Appellant was fully competent and offered his plea knowingly, intelligently, and voluntarily. Id. @ 6-7. PCRA counsel will not be found ineffective for failure to pursue a meritless course. Error was not committed.

Appellant also asserts that trial counsel was ineffective for misinforming him that he would be sentenced to any more than an additional fifteen months of incarceration following his offer to plead nolo contendre. This claim is without merit.

As previously discussed, where the record clearly demonstrates that a plea colloquy was conducted during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. Appellant is bound by the statements he made during the colloquy and may not now contradict statements made when he pled.

6

*Commonwealth v. McCauley, supra.* Instantly, the Record demonstrates that Appellant was fully aware of the crimes to which he was pleading *nolo contendere* and that he was fully aware that he faced a maximum sentence of up to sixty-three (63) years of imprisonment. Error was not committed.

Trial counsel did not render ineffective assistance and did not unlawfully induce Appellant to offer the plea of *nolo contendere*. Error was not committed.

Finally, Appellant complains that trial counsel was ineffective for failing to file a motion for reconsideration of sentence. This claim is without merit.

In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective Appellant is required to establish beyond a preponderance of the evidence that, inter alia, petitioner was prejudiced by counsel's act or omission. *Commonwealth v. Fitzgerald, supra.* In the case *sub judice*, Appellant was not entitled to a reconsideration of his sentence and a motion to obtain post sentence relief would not have been granted. It is well settled that sentencing is a matter vested in the sound discretion of the sentencing judge. *Commonwealth v. Reynolds*, 835 A.2d 720 (Pa. Super. 2003). The sentence imposed in the instant case does not violate any provision of the Sentencing Code and is within the fundamental norms underlying the sentencing scheme. Before imposing sentence the Court considered the Sentencing Guidelines, Appellant's testimony, the Presentence Mental Health Evaluation, and arguments of counsel. N.T. 1/10/2006 @ 4-5, 14, 29-36. At no time did Appellant show remorse for his crimes, but rather, he steadfastly asserted his right as a parent to inflict such 'discipline' and repeatedly attempted to justify his horrific crimes against this eight year old child. Under the circumstances presented by this case the sentence of the Court is not excessive and is consistent with the Sentencing Guidelines. The Court

7

would not have granted a motion for reconsideration of sentence and trial counsel will not be deemed ineffective for failing to pursue a meritless motion. Error was not committed.

CONCLUSION

For the foregoing reasons, error was not committed and the Order denying PCRA relief should be affirmed.

BY THE COURT

DATE: 8/27/14

_____  BRIGHT, J.

8