J-S03041-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN SOLOMON, | : | |
| | : | |
| Appellant | : | No. 1501 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 6, 2019
in the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001333-2017

BEFORE:    DUBOW, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                **FILED:  September 13, 2021**

Appellant, John Solomon, appeals from the Judgment of Sentence

entered on September 6, 2019,[1] following Appellant's non-jury convictions of

Driving Under the Influence ("DUI") – Refusal,[2] DUI – General Impairment,[3]

---

[1] The trial court sentenced Appellant in open court on September 6, 2019, but did not file the sentencing order until September 16, 2019.  "In a criminal case in which no post-sentence motion has been filed, a judgment of sentence is appealable upon the imposition of sentence in open court." Pa.R.A.P. 301(a)(2).  This Court has "interpreted the language 'imposition of sentence' as the date that the trial court pronounced the sentence in open court, not the date that the order imposing the judgment of sentence was docketed, if those dates are different." **Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007) (citation omitted).  Thus, Appellant's sentence lies from the September 6, 2019 imposition of sentence in open court.  We have corrected the caption accordingly.

[2] 75 Pa.C.S. § 3802(a)(1).

[3] 75 Pa.C.S. § 3802(a)(1).

* Retired Senior Judge assigned to the Superior Court.

Disorderly Conduct,[4] Exceeding the Speed Limit,[5] and Failure to Keep Right.[6] After careful review, we affirm.

Appellant's convictions stem from an incident on April 29, 2017, when Officer Peter Jaskiewicz observed Appellant driving at least 39 miles per hour in a 25 mile-per-hour zone. As Appellant approached a 25-mile-per-hour construction zone without slowing, Officer Jaskiewicz activated his lights and sirens to initiate a traffic stop. After doing so, Appellant swerved left of the center yellow line twice and across the right-hand fog line once. Appellant continued to drive for several hundred feet before pulling over. Officer Jaskiewicz approached the vehicle as Appellant was winding up his driver's window. After Appellant wound down his window, Officer Jaskiewicz spoke with Appellant. Officer Jaskiewicz observed that Appellant was "slurring his words[,]" "had glassy, bloodshot eyes[,]" responded from the very beginning

---

[4] 18 Pa.C.S. § 5503(a)(4).

[5] Appellant was charged with Exceeding the Speed Limit ("35 MPH in urban dist by 10 MPH") at "75 Pa.C.S. § 3362(a)(1-10)." Criminal Information, 9/14/2017. There is no subsection (a)(1-10). It appears from the record that Appellant was charged with violating subsection (a)(1), which sets a maximum speed limit of 35 miles per hour in urban zones. However, as discussed *infra*, Appellant's violation was premised on his driving 39 miles per hour in a posted **25-mile-per-hour** zone. *See, e.g.,* Order of Court, 9/10/2018, at 1 (unnumbered) (finding Appellant guilty "on the charge of Exceeding the Speed Limit in an Urban District by 10 MPH, 35 MPH in a 25 MPH zone"). Thus, the appropriate charge would be subsection (a)(1.2). Because Appellant does not challenge this conviction or the subsection with which he was charged, we need not address any potential error based thereon.

[6] 75 Pa.C.S. § 3301(a).

in a "hostile and belligerent" manner, and had "the odor of alcoholic beverage on him." N.T., 8/24/2018, at 8–10. When asked where he was coming from, Appellant replied that he was coming from the Friendship Lounge, which is a bar. Appellant generally refused to follow the officer's commands. Appellant refused to perform field sobriety tests due to a bad hip. Based on what Officer Jaskiewicz observed prior to and during the traffic stop, he arrested Appellant for suspicion of DUI. Appellant remained combative and argumentative while being transported to and within the Pennsylvania State Police barracks. Appellant refused to submit to a breathalyzer test at the barracks and was restrained after he smacked Trooper George Carlberg's hands.

As a result of the foregoing, Appellant was charged with the abovementioned crimes. On March 12, 2018, the trial court held a suppression hearing, during which the court heard testimony from Officer Jaskiewicz and Appellant. At the conclusion of the hearing, the trial court found probable cause for the traffic stop and denied Appellant's Motion to Suppress. On August 24, 2018, Appellant proceeded to a non-jury trial, at the conclusion of which the court found Appellant guilty of all charges. On

September 6, 2019,[7] the court sentenced Appellant to an aggregate term of incarceration of four to nine months.

Appellant timely appealed.[8] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I.   Whether there was insufficient evidence for the trial court to conclude Appellant was incapable of safely driving a vehicle in violation of 75 Pa.C.S.[] § 3802(a)(1) such that finding Appellant guilty of driving under the influence of alcohol is reversible error.

II.  Whether the trial court erred in concluding the officer's attempt to ascertain speed using a speedometer for a generally short distance pursuant to 75 Pa.C.S.[] § 3368(a) such that finding probable cause to stop Appellant's vehicle is reversible error.

III. Whether the trial court erred on June 21, 2018 in denying Appellant's motion for recusal for the bench trial after a full suppression hearing on March 12, 2018 gave rise to violation of Appellant's constitutional due process rights.

IV.  Whether the trial court erred in denying Appellant's Petition to Reinstate Post-Sentence Rights *nunc pro tunc* and set bail during appeal pursuant to Pa.R.Crim.P. 521 where finding of facts and conclusions of law were not of record until December 4, 2019.

Appellant's Br. at 2–3 (notes on preservation omitted).

---

[7] In the interim, Appellant, *inter alia*, obtained several continuances, was arrested on a bench warrant for failure to appear at a scheduled sentencing hearing, and retained new counsel.

[8] On October 3, 2019, counsel filed a Notice of Appeal. Appellant simultaneously filed a *pro se* Notice of Appeal on the same day.

In his first issue, Appellant challenges the sufficiency of the evidence to support his DUI – General Impairment conviction. He argues the Commonwealth failed to prove beyond a reasonable doubt that he was incapable of safe driving. *Id.* at 6.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Our standard of review is *de novo*, and our scope of review is limited to the evidence admitted at trial viewed in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Rushing*, 99 A.3d 416, 420–21 (Pa. 2014).

"[W]hile passing on the credibility of the witnesses and the weight of the evidence [the factfinder] is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (citation omitted). "Our jurisprudence does not require fact[]finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence. Instead, [the factfinder] may make reasonable inferences from circumstantial evidence introduced at trial." *Commonwealth v. Teems*, 74 A.3d 142, 148 (Pa. Super. 2013) (internal citation omitted). "[T]he [factfinder's] individualized assessment of the credibility of the trial evidence is, as a general principle, not to be questioned by an appellate court as part of its review, even if the evidence is conflicting." *Commonwealth v. Brown*, 52 A.3d 1139, 1165 (Pa. 2012)

(citations omitted). Rather, the factfinder's credibility determinations will only be disturbed "in those exceptional instances … where the evidence is so patently unreliable that the [factfinder] was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." *Id.* (citations omitted).

Appellant argues that the language "'incapable of safe driving' is ambiguous and requires interpretation." Appellant's Br. at 6. We disagree. This Court has explained the requirements to sustain a conviction for DUI – General Impairment as follows.

> [T]he Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. *Commonwealth v. Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000). To establish the second element, the Commonwealth must show that alcohol has
>
>> substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.
>
> *Id.* (citations and footnote omitted).

*Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa. Super. 2017) (*en banc*). The Commonwealth may present different types of evidence to

establish that a defendant had imbibed sufficient alcohol as to render him incapable of safe driving.

> The types of evidence that the Commonwealth may proffer in a [subs]ection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol[;] and slurred speech. ... The weight to be assigned these various types of evidence presents a question for the fact[]finder, who may rely on his or her experience, common sense, [or] expert testimony.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009).

Here, the trial court, sitting as factfinder, credited Officer Jaskiewicz's testimony that "Appellant was speeding and driving in an erratic manner. [Appellant] exhibited classic signs of intoxication including glassy, bloodshot eyes, emitting odor of alcohol, slurred speech, and belligerent demeanor." Trial Ct. Op., 12/12/2019, at 11. In doing so, the trial court discredited Appellant's testimony that he was not speeding and that he swerved only to avoid potholes. In rendering its verdict, the court noted that Appellant's "slurred speech is evident from the video." N.T., 8/24/2018, at 105. While the court acknowledged that some of Appellant's belligerent behavior following the traffic stop could have been due to his personality, the court found the evidence "beyond just a normal upset or angry personality. He clearly showed signs of impairment." ***Id.*** at 106.

Appellant argues that

[b]elligerent behavior, difficulty in finding his driver's license under a stressful situation, bloodshot or glassy eyes does not establish intoxication. The prosecution in the instant case did not establish that Appellant could not ambulate on his own or speak coherently. There is ample evidence of animosity Appellant has with local authorities. When the evidence is insufficient to establish that Appellant was under the influence of alcohol to a degree which rendered him incapable of safe driving, the [t]rial [c]ourt should be reversed. In this case, the evidence is that Appellant could ambulate and speak coherently although with cursing.

Appellant's Br. at 9 (citation omitted).

As factfinder, the trial court was permitted to credit the testimony of Officer Jaskiewicz over that of Appellant. While Appellant tries to persuade this Court to credit Appellant's testimony instead, he has not established that this is one of those exceptional circumstances wherein this Court may disturb a factfinder's credibility determinations. Viewed in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient to prove that Appellant had imbibed an amount of alcohol that rendered him incapable of safe driving. Accordingly, we hold that the evidence was sufficient to convict Appellant of DUI.

In his second issue, Appellant challenges the trial court's denial of his Motion to Suppress based on the court's conclusion that Officer Jaskiewicz had probable cause to stop Appellant's vehicle. *Id.* at 10. Appellant argues Officer Jaskiewicz's brief use of an uncertified speedometer to calculate Appellant's driving speed could not establish probable cause. *Id.* at 10–14.

We review the trial court's decision to deny a motion to suppress to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Milburn**, 191 A.3d 891, 897 (Pa. Super. 2018) (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Freeman**, 150 A.3d 32, 34 (Pa. Super. 2016) (citation omitted). We are bound by the suppression court's factual findings where they are supported by the record, and we may reverse only if the court's legal conclusions are erroneous. **Id.** at 35. Because this Court's mandate is to determine if the suppression court properly applied the law to the facts, our scope of review is plenary. **Id.**

A traffic stop is justified where the police officer has probable cause to believe that the driver has violated a provision of the Vehicle Code. **Commonwealth v. Spieler**, 887 A.2d 1271, 1275 (Pa. Super. 2005). Where the facts and circumstances known to the officer warrant a reasonable and prudent person in believing that an offense has been committed, a vehicle stop is valid. **Commonwealth v. Salter**, 121 A.3d 987, 997 (Pa. Super. 2015).

At the suppression hearing, Officer Jaskiewicz testified that he pulled behind Appellant's vehicle and observed that the license plate did not have a registration sticker. N.T., 3/12/2018, at 5–6. According to Officer Jaskiewicz, the Commonwealth was beginning to transition away from stickers at that time. *Id.* He wanted to ensure that the vehicle had a valid registration, so he followed Appellant's vehicle for approximately one half-mile while he waited for dispatch to check the vehicle's registration status. *Id.* at 6–8, 24–25. As Officer Jaskiewicz followed Appellant's vehicle on a posted 25-mile-per-hour street, Appellant sped up to at least 39 miles per hour according to Officer Jackiewicz's speedometer. *Id.* at 6–7. Appellant continued to speed as he approached a construction zone, which also had a posted 25-mile-per-hour speed limit, so Officer Jaskiewicz activated his lights and sirens to initiate a traffic stop. N.T., 3/12/2018, at 10–11, 19, 21–22, 25–26.

On appeal, Appellant argues that Officer Jaskiewicz could not rely on his speedometer to ascertain Appellant's driving speed because the Commonwealth failed to establish, pursuant to 75 Pa.C.S. § 3368, that Officer Jaskiewicz's speedometer had been certified within one year prior to the incident. Appellant's Br. at 12.

Section 3368 provides in pertinent part as follows.

**(a) Speedometers authorized.--**The rate of speed of any vehicle may be timed on any highway by a police officer using a motor vehicle equipped with a speedometer. In ascertaining the

speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile.

**(b) Testing of speedometers.--**The department may appoint stations for testing speedometers and may prescribe regulations as to the manner in which the test shall be made. Speedometers shall have been tested for accuracy within a period of one year prior to the alleged violation and immediately upon change of tire size. A certificate from the station showing that the test was made, the date of the test and the degree of accuracy of the speedometer shall be competent and *prima facie* evidence of those facts in every proceeding in which a violation of this title is charged.

75 Pa.C.S. § 3368(a-b).

Instantly, Officer Jaskiewicz testified at the suppression hearing that he followed Appellant and monitored his driving speed via his speedometer for at least one half-mile. N.T., 3/12/2018, at 8. Therefore, Officer Jaskiewicz was authorized to determine Appellant's driving speed using his speedometer pursuant to subsection 3368(a). It is of no moment that the Commonwealth did not prove the certification requirements in subsection 3368(b) because they do not apply to a determination of whether an officer has probable cause to initiate a traffic stop. Rather, the certification requirements apply when the Commonwealth attempts to prove the offense of speeding beyond a reasonable doubt based upon a speedometer calculation. Therefore, contrary to Appellant's argument, the Commonwealth was not required to establish when the speedometer was last certified in order for Officer Jaskiewicz to be able to rely on his speedometer reading to establish probable cause for the traffic stop.

Based on the foregoing, Officer Jaskiewicz had a reasonable and articulable belief that Appellant had violated Section 3362 of the Vehicle Code by driving 14 miles-per-hour over the posted speed limit. Thus, we conclude that the trial court correctly determined that Officer Jaskiewicz had probable cause to stop Appellant's vehicle and properly denied Appellant's Motion to Suppress.

In his third issue, Appellant challenges the trial court's denial of his Motion to Recuse. Appellant's Br. at 15. According to Appellant, the trial court erred in denying Appellant's motion on June 21, 2018, because the court sat as factfinder during both Appellant's suppression hearing and bench trial. *Id.* at 15–16. Additionally, the court viewed the video of the stop in chambers before trial, and only a portion of the video was admitted into evidence at trial. *Id.*

"[W]e recognize that our judges are honorable, fair and competent." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998) (citation omitted). Thus, "[o]ur standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential." *Commonwealth v. Harris*, 979 A.2d 387, 391 (Pa. Super. 2009) (citation omitted). "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion." *Commonwealth v. Dip*, 221 A.3d

201, 206 (Pa. Super. 2019) (citation omitted), *appeal denied*, 229 A.3d 567 (Pa. 2020).

The party requesting recusal must "produce evidence establishing bias, prejudice or unfairness [that] raises a substantial doubt as to the jurist's ability to preside impartially." **Commonwealth v. Tedford**, 960 A.2d 1, 55–56 (Pa. 2008) (citation omitted). Absent evidence of record, we will not disturb the decision of the trial court to deny a motion to recuse. **See, e.g., Dip**, 221 A.3d at 214–15 (declining to consider allegations that trial judge had financial stake in potential litigation against the district attorney's office or that judge's *ex parte* communications established bias where the Commonwealth failed to support allegations with evidence of record).

By way of background, on June 21, 2018, the trial court held a hearing to address Appellant's concerns with trial counsel. During that hearing, the following exchange occurred.

| [TRIAL COUNSEL]: | Your Honor, have you ruled on the motion I presented this morning? |
|---|---|
| THE COURT: | Your attorney presented a motion this morning to recuse based on the video that I already saw. I was holding it in abeyance because I'm not sure what is the status of that video. |

***

| THE COURT: | … I'm willing to grant you a continuance to prepare further, if you just got the suppression transcript. |

N.T., 6/21/2018, at 12–13.

The trial court did not rule on the motion to recuse during the hearing. Inexplicably, the Motion to Recuse does not appear in the certified record, nor does any ruling on the Motion. **Commonwealth v. Steward**, 775 A.2d 819, 835 (Pa. Super. 2001). "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (citation omitted). "In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted." **Id.** "[A]ny claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." **Id**. (citation omitted). Because Appellant's motion and the trial court's ruling are not included in the certified record, we cannot review whether the trial court abused its discretion in denying the motion. Accordingly, this claim is waived.[9]

---

[9] Even if not waived, we discern no evidentiary basis upon which to disturb the decision of the trial court to deny Appellant's Moton to Recuse because the record lacks any evidence "establishing bias, prejudice or unfairness [that] raises a substantial doubt as to the jurist's ability to preside impartially." **Tedford**, 960 A.2d at 55–56 (citation omitted); **see also Commonwealth v. Postie**, 110 A.3d 1034, 1038 (Pa. Super. 2015) (citation omitted) (holding trial court did not abuse its discretion in denying recusal motion where court had sat as suppression court because the defendant "made no argument that his admissions at the suppression
*(Footnote Continued Next Page)*

- 14 -

In his final issue, Appellant challenges the trial court's denial of his Motion to Reinstate Post-Sentence Rights *Nunc Pro Tunc* and to Set Bail During Pendency of Appeal. Appellant's Br. at 17. Specifically, he argues that "[i]n the interest of justice, reinstatement of post-sentence rights should have been ordered by the [t]rial [c]ourt." *Id.*[10]

By way of background, Appellant filed the Motion to Reinstate Post-Sentence Rights *Nunc Pro Tunc* on October 21, 2019, three weeks after he filed his Notice of Appeal. On October 24, 2019, the trial court denied the Motion. In its Rule 1925(a) Opinion, the trial court explains that it denied Appellant's Motion because despite being advised of his post-sentence rights, Appellant never attempted to file a post-sentence motion and there was no evidence presented that he asked appointed counsel to file a post-sentence motion on his behalf. "[N]o request was made to reinstate [Appellant's] post-sentence rights until after his notice of appeal was filed. The trial court cannot grant [Appellant] the right to file post-sentence motions when [Appellant] had an appeal pending before the Superior Court." Trial Court Opinion, 12/12/2019, at 14–15.

This Court has recognized "that under 42 Pa.C.S.[] § 5505, if no appeal had been taken, within 30 days after the imposition of sentence, the

_____

*(Footnote Continued)*  _____

hearing were inadmissible or that trial proceedings were flawed" and, in any event, "a trial judge is 'capable of disregarding prejudicial evidence'").

[10] Appellant does not challenge the court's denial of his bail request.

trial court has the discretion to grant a request to file a post-sentence motion *nunc pro tunc*." ***Commonwealth v. Dreves***, 839 A.2d 1122, 1128 (Pa. Super. 2003) (*en banc*). "Consistent with this principle, … the decision to allow the filing of a post-trial motion *nunc pro tunc* is vested in the discretion of the trial court and … we will not reverse unless the trial court abused its discretion." ***Id.*** (citation omitted).

There are several requirements that a defendant must satisfy before being entitled to file a post-sentence motion *nunc pro tunc*.

> To be entitled to file a post-sentence motion *nunc pro tunc,* a defendant must, within 30 days after the imposition of sentence, demonstrate sufficient cause, *i.e.*, reasons that excuse the late filing. Merely designating a motion as "post-sentence motion *nunc pro tunc*" is not enough. When the defendant has met this burden and has shown sufficient cause, the trial court must then exercise its discretion in deciding whether to permit the defendant to file the post-sentence motion *nunc pro tunc.* If the trial court chooses to permit a defendant to file a post-sentence motion *nunc pro tunc,* the court must do so expressly. … Similarly, in order for a petition to file a post-sentence motion *nunc pro tunc* to be granted, a defendant must, within 30 days after the imposition of sentence, demonstrate an extraordinary circumstance which excuses the tardiness.

***Id.*** (footnote omitted). The filing of a notice of appeal impacts the ability of a trial court to consider a post-sentence motion for reconsideration.

> [W]hen an appeal is taken, the trial court has no jurisdiction to modify its sentence. Pa.R.A.P. 1701(a); ***Commonwealth v. Gordon***, 477 A.2d 1342 (Pa. Super. 1984).
>
> Exceptions to these general rules exist such that, once an appeal is taken, the trial court may still have authority to proceed further in the matter. Pa.R.A.P. 1701(b). For example, the trial court may reconsider its sentence, so long as a motion for reconsideration was timely filed with, Pa.R.A.P. 1701(b)(3)(i),

and expressly granted by the trial court within the thirty-day time limit prescribed for filing a notice of appeal, Pa.R.A.P. 1701(b)(3)(ii). ***Commonwealth v. Gordon, supra***.

***Commonwealth v. Quinlan***, 639 A.2d 1235, 1238 (Pa. Super. 1994) (citations altered).

Instantly, Appellant filed his Motion to Reinstate Post-Sentence Rights *Nunc Pro Tunc* more than 30 days after his Judgment of Sentence was imposed, and three weeks after filing his Notice of Appeal to this Court. As such, the trial court was without jurisdiction to consider Appellant's Motion. ***See Commonwealth v. Hart***, 174 A.3d 660, 663 n.4 (Pa. Super. 2017) ("We note that the trial court's denial of [Hart's] reconsideration motion is a legal nullity because it was without jurisdiction to deny the motion as [Hart] already had filed an appeal in this court. ***See*** 42 Pa.C.S.[] § 5505 …. Moreover, even if [Hart] had not appealed to this Court, the trial court still would have been without jurisdiction to dispose of the reconsideration motion because it did so more than 30 days after it denied his post-sentence motion to withdraw the plea of *nolo contendere*."). Accordingly, Appellant is not entitled to relief on this claim.

For the foregoing reasons, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judge Murray joins the memorandum.

- 17 -

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2021